In the Matter of Benjamin Louis MILLER, Debtor.

Benjamin Louis MILLER, Plaintiff,

v.

PEOPLES BANK OF MILLER, Defendant.

Bankruptcy No. 80–00778–SW.

United States Bankruptcy Court, W. D. Missouri, Southwestern Division.

Nov. 28, 1980.

**44**

———

F. Max Lilley, Springfield, Mo., for plaintiff.

Monte Cable, Joplin, Mo., for defendant.

FINAL JUDGMENT AVOIDING THE DEFENDANT'S LIEN ON THE PLAINTIFF'S PROPERTY EXCEPT TO THE EXTENT OF $20,893.00

DENNIS J. STEWART, Bankruptcy Judge.

The facts of this case appear to demonstrate that the new Bankruptcy Code's provision for lien avoidance is not intended to bestow any rights or property interest upon a debtor beyond those which are conferred by the general law's concept of the debtor's "equity" in that property.

In the hearing which has been conducted by the court on the issues made material by the plaintiff's complaint for lien avoidance herein, it has been established that the defendant has a valid and perfected security interest in all the articles in respect of which the plaintiff seeks to avoid the lien under § 522(f) of the Bankruptcy Code. The value of the property itself remains undetermined. But both parties contend that its value is less than the balance of $20,893.00 which is owed to the defendant bank by the plaintiff.[1]

■ The issue presented for resolution by the court, therefore, is whether a debtor must have an unencumbered equity interest in property in order to avoid a lien thereon under the provisions of § 522(f), *supra*. It is the debtor's contention that "the *total value* of such property is exempt" (emphasis added) and, therefore, the lien thereon is avoidable under § 522(f), *supra*. The defendant, on the other hand, contends that:

"Section 522(f) applies only to avoiding a lien which covers debtor's interest in the property and, in this case, debtor has no interest in the property in question because he has no equity therein ..."

In respect of the question of law thus presented, the court issued its order herein on August 21, 1980, directing the parties to show cause in writing why the lien of the defendant should be avoided only as to any equity which would remain above the balance due to defendant of $20,893.00. In that order, the court recited the following considerations:

"[T]he precise letter of ... [§ 522(f)] makes [lien] avoidance dependent upon the property's being exempt under § 522(b). That section, in turn, at subsection (b)(1) thereof, provides for the exemption of 'property that is specified under subsection (d) of this section.' And, as applicable here, that section exempts only '[t]he debtor's interest' in the property there described.

"The court is aware that the debtor in the action at bar is claiming his exemptions pursuant to the applicable state law, rather than the provisions of §§ 522(b) and (d)(1), *supra*. See § 522(b)(2)(A), which permits him to make this election. But the state exemptions have not previously been regarded as effective under the bankruptcy law except insofar as the debtor had an equity in the property. See *Karszinia v. Kelsey*, 262 S.W.2d 844, 845 (Mo.1953), in which it was held that, with respect to the Missouri homestead exemption, a debtor might claim only his equity as exempt. 'Defendants' land being subject to a deed of trust, they were entitled to a homestead exemption in what remained of the total value after deducting the indebtedness secured by the deed of trust.' Nor does this concept appear to have been at all changed by the provisions of the new Bankruptcy Code which conceive of the debtor's owning an equity in the property

———

1. The debtor, in his "motion to avoid lien" filed herein on July 18, 1980, states that "the amount of the claim of the Peoples Bank· of Miller is approximately $20,893.00" and further asserts that the value of the property is a total of $14,400.

as the prerequisite to his having a *pro tanto* exemption in that property. [It is to be noted that the letter of § 522(f) itself limits avoidance to an "interest of the debtor" in the property with respect to which the lien is avoided.] [The necessity for an equity interest as the precondition of lien avoidance] is made clear by the legislative history under § 722 of the Code, which section provides for a debtor's redemption of certain personal property subject to a lien 'by paying the holder the amount of the allowed secured claim of such holder that is secured by such lien.' That legislative history, as here pertinent, states as follows:

'The right to redeem extends to the whole of the property, not just the debtor's exempt interest in it. Thus, for example, if a debtor owned a $2,000 car, subject to a $1,200 lien, *the debtor could exempt his $800 interest in the car.* The debtor is permitted a $1,500 exemption in a car ... 11 U.S.C. § 522(d)(2). This section permits him to pay the holder of the lien $1,200 and redeem the entire car, not just the remaining $700 of his exemption.' (Emphasis added.)

"This explicative material makes it clear that the debtor entitles himself to exemption from a lienholder's rights as a secured creditor ... only to the extent that he has paid for, and thus has an equity interest in, that property. Further this court has, sitting en banc, in its prior decision on the constitutionality of § 522(f), *supra*, intimated that any other interpretation of the section may run afoul of the Fifth Amendment's prohibition of the taking of property without just compensation. [*In re Baker*, 5 B.R. 397 (W.D.Mo. Brtcy July 31, 1980).] ..."

In response to that order, the plaintiff herein has adverted to bankruptcy court decisions in which it has been held expressly that "interest of the debtor" within the meaning of § 522(f), *supra*, is not limited to an equity in the property, in the sense of an excess over the balance due on the encumbrance. These decisions, however, wholly ignore the effect of the above-cited unambiguous legislative history which, by graphic example, compels a contrary result. And, further, the only authority cited in the decisions which hold that the lien may be avoided in the absence of an equity interest of the debtor do not, in turn, rely upon any recognizable authority or any reason and logic which is palpable in terms of the purpose and direction of the bankruptcy laws of the United States.

The decision which seems to be most frequently cited for the proposition that an equity interest is not a necessary prerequisite to lien avoidance is *In re Van Gorkom*, 4 B.R. 689, 691 (Bkrtcy. D.S.D. 1980). In that action, the court expressly held that

"although Debtor has no equity in the freezer, Debtor does have an *interest* in the freezer and is entitled to claim it as exempt. This Court believes Congress did not intend the word 'interest' to be used interchangeably with the word 'equity'. If it had been the intent of Congress to allow the Debtor to exempt property only where the Debtor has equity in the property, Congress would have so stated."

But, as noted above, no authority is cited for that conclusion. Indeed, the only authority which is cited is a quotation from the senate reports among the legislative history which support the equation of "interest" and "equity." See S.Rep.No.989, 95th Cong., 2d Sess. 76, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5861 (1978), to the following effect:

"Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of exemption."

Nor does it appear that the conclusion reached by the court in *In re Van Gorkom*, *supra*, can be justified on the basis of reason or logic, apart from the unambiguous legislative history on this issue. For, the paramount question which is posed by the *Van Gorkom* analysis, *supra*, is what interest the debtor has, apart from an "equity" interest, which must be protected through

avoidance of a lien. If it is said that the debtor has a possessory interest, that interest must be regarded as sufficiently protected by the automatic stay and the legal principles which govern its being continued in effect or modified. Otherwise, it appears to constitute a taking of property from one party and granting it to another, in violation of the Fifth Amendment to the United States Constitution, to permit the avoidance of a lien where the debtor can claim no interest in the sense of "equity."

In *Van Gorkom, supra,* furthermore, the court holds that a debtor may avoid liens without any of the limitations which are placed on his power and ability to exempt property from the trustee under section 522(b); that

"(i)t was the intent of Congress to allow a debtor exemptions in property up to certain amounts. Only the unencumbered portion of the property, in other words any equity the debtor might have in the property, is to be used for the purpose of determining when a debtor has used up his exemptions. If a debtor claims an exemption in property in which he has no equity, there is no reduction in the amount of his exemptions."

Such reasoning not only ignores the express wording of section 522(f) which makes lien avoidance dependent upon the power to exempt the property under section 522(b), but it creates the specter of unlimited lien avoidances in a manner never foreseen or intended by the framers of the new bankruptcy laws.

The other decisions and authorities which have been cited to support the proposition that a debtor is entitled to avoid a lien up to the present value of the property, without regard to the existence of any equity in the property for the debtor, seem simply to *assume* that this may be done, without any support in pre-existing decisions or authority.[2]

■ Furthermore, this court, in arriving at the meaning of the words "interest of the debtor" and "debtor's interest" as they

2. The debtor in this action chiefly relies upon *In re Ford*, 3 B.R. 559 (Bkrtcy. D.Md.1980), in which the court held that "neither the existence of a lien nor the lack of equity in the debtor prevents the taking of an available exemption." It is difficult to reconcile such a holding with the precise letter of § 522(f) which, by its own terms, permits lien avoidance only with respect to property which may be exempted. And, in turn, § 522(b) permits exemption only in respect to the debtor's interest in that property. "[S]ubsection (f) allows the debtor to avoid the fixing of certain liens to the extent that such a lien impairs an exemption . . . When the debtor avoids the fixing of lien, pursuant to section 522(f) . . . the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor." 4 Collier on Bankruptcy para. 522.29, p. 522–68 (1979). The debtor further argues that some legislative history supports lien avoidance without reference to the existence of any equity in the property for the debtor. · Thus, he cites H.Rep.No. 95--595, 95th Cong., 1st Sess. 126–27, U.S.Code Cong. & Admin.News 1978 at 5912–13 (1977), to the effect that at least one of the purposes of the new Code's lien avoidance provisions is to thwart "overreaching" creditors who have either sold the goods for more than they are worth or are owed more than they are worth at the time of bankruptcy. But it is unjust and senseless to make all creditors give up their property interests for the sins of a minority of them. This is especially so when the evils to be protected against are sufficiently protected under the general law which refuses enforcement to unconscionable contracts and contracts of adhesion. And finally, there is nothing in the legislative history thus adverted to which unambiguously warrants lien avoidance without regard to the existence of an equity in the property for the debtor. Thus, there is nothing to contradict the unambiguous legislative history cited in the text of this memorandum. (Further, it must be doubted whether this particular legislative history had any effort at all upon the content of § 522(f). For "overreaching" vendors would still be protected thereunder by the provision against avoiding a purchase money security interest. The debtor's interpretation of the Code would penalize only those creditors who could not be characterized as "overreaching.")

Otherwise, one scholarly article touching on the issue in the action at bar indicates that the issue was then unresolved. See Lee, Chapter 13 nee Chapter XIII, 53 American Bankruptcy Law Journal 303, 307 (1979) ("While this issue remains to be resolved in liquidation cases, there is no doubt about the right of the debtor to redeem personal property on the installment plan in chapter 13 cases, so long as the lienholder is paid the value of the property under the plan.")

appear in the material portions of section 522, *supra,* must be guided by the primary canon of interpretation: that unambiguous revelations of the intent of the Congress of the United States must be regarded as controlling. And, in this regard, the two portions of legislative history above adverted to are clear and unambiguous in equating those phrases with the debtor's "equity."

Finally, it must be said that, without the limitation on those phrases which is invoked in this case, it would run counter to the Fifth Amendment's protection of property interests to authorize the literal "taking" of property from one entity and the granting of it to another, without even any colorable claim existing in the grantee. It has always been regarded as a constitutional violation for the government, by legislation or otherwise, to take property for anything but a public purpose.[3] And to give the phrases "interest of the debtor" and "debtor's interest" a broader meaning than "equity interest" would be to effect and promote that which the Constitution forbids in this regard. However low the constitutional provisions which protect the fundamental interest in property may be regarded by some, they continue to be regarded by many as the Republic's chief bulwark against socialism and the impetus which would redistribute the nation's wealth. "Without property rights, the Constitution's framers knew, all other rights would be without practical value ... In today's hierarchy of legal values, property rights have been relegated to a lesser level. Yet, as already stressed, it should not be lost sight of that the ultimate social interest is that in the individual life, nor that the fulfillment of that interest is impossible without the protection of private property." B. Schwartz, *The Law in America,* p. 287 (McGraw-Hill 1974). Yet, under the interpretation urged by the debtor in this action, a "taking" of one's property could be effected simply by giving him a security interest in exchange therefor[4] and then resorting to chapter 7 or chapter 13 proceedings under the Bankruptcy Code before its value was paid. Despite protestations to the contrary, the framers of the national bankruptcy laws could not have intended such a result, just as the framers of the Constitution did not intend to permit such a result.[5]

It is therefore, for the foregoing reasons

ADJUDGED that the plaintiff's complaint for lien avoidance be, and it is hereby, granted, but only to the extent that the

---

**3.** "The Fifth Amendment of the United States Constitution forbids the Government from taking property ... for any purpose other than for a public use. *Hanson Lumber Co. v. United States,* [261 U.S. 581, 587, 43 S.Ct. 442, 444, 67 L.Ed. 809 (1922)]." *United States v. 658.59 Acres of Land, More or Less,* 224 F.Supp. 645, 646 (W.D.Pa.1963).

**4.** The provisions of § 522(f), of course, do not permit the avoidance of a purchase money security interest. So, generally, it is not possible to purchase articles for time payments, and then take bankruptcy and avoid the lien without paying for the purchased article. But it is certainly possible to gain money or other value by giving a security interest on property and then promptly avoiding that security interest in bankruptcy proceedings.

**5.** As this court has previously noted in *In re Baker,* 5 B.R. 397, 399, n.4 (Bkrtcy. W.D.Mo. July 31, 1980):
"See *Louisville Joint Stock Bank v. Radford,* 295 U.S. 555, 601 [55 S.Ct. 854, 868, 79 L.Ed. 1593] (1935), holding that the Frazier-Lemke Act (under the terms of which a debtor might obtain a five-year stay of foreclosure proceedings against a lienholder, at the end of which he might pay an appraised price) 'has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value ... [and therefore] we must hold it void; for the Fifth Amendment commands that, however great the nation's need, private property shall not thus be taken even for a wholly public use without just compensation.' The court, in *In re Rodrock* [3 B.R. 629, (D.Colo. Bkrtcy. 1980)], interpreted *Radford* to hold that 'a substantive right in specific property cannot be substantially impaired by legislation enacted after the right has been created without doing violence to the property owner's right to due process.' But the safeguards subsequently undertaken to preserve the constitutionality of Frazier-Lemke, the retention of the liens during the bankruptcy proceedings (see *John Hancock Mut. Life Ins. Co. v. Bartels,* 308 U.S. 180, 186 [60 S.Ct. 221, 224, 84 L.Ed. 176] (1939)), purported to apply whether the lien vested before or after the effective date of the Act."

value of the property may exceed $20,-893.00.[6]

---

6. Inasmuch as it has in this proceeding been established that the value of the property is less than $20,893.00, the effect of this judgment

is to compel return to the debtor of any and all value over that amount which the defendant may realize from disposition of the property.