KEARSE, Circuit Judge:
 

 Defendant Virginia M. Dellinger, a state court judgment creditor of plaintiff Barbara Bex Brown, appeals from an order of the United States District Court for the Northern District of New York, 39 B.R. 83, Howard G. Munson,
 
 Chief Judge,
 
 affirming an order of the bankruptcy court which, pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101-1330 (Supp. IV 1980) (“Bankruptcy Code” or “Code”), allowed Brown to (a) include in her bankruptcy estate $7,543.38 in surplus funds generated by a prebankruptcy foreclosure sale of certain real estate owned by Brown, (b) claim an exemption under Bankruptcy Code § 522(b) for those funds, and (c) invoke Bankruptcy Code § 522(f)(1) to avoid the fixing of Dellinger’s judicial lien on the funds. On appeal, Dellinger contends that Brown had no right to include the funds in her bankruptcy estate, no right to an exemption, and, in any event, no exemption that could defeat Dellinger’s lien. We disagree, and we affirm the order of the district court.
 

 BACKGROUND
 

 The relevant details of this controversy, though somewhat complex, are apparently undisputed. On September 19, 1978, Del-linger obtained a judgment for $1,710.15 against Brown. The judgment was docketed by Dellinger in the Onondaga County Clerk’s Office and, under New York law, became a lien on any real property of Brown in that county. In an unrelated series of events, the First Federal Savings and Loan Association of Rochester (“First Federal”), as mortgagee of Brown’s residence in Onondaga County, instituted a mortgage foreclosure proceeding in September 1979 which resulted in the February 1980 sale of Brown’s residence. First Federal’s foreclosure judgment was satisfied out of the proceeds of the sale, leaving a $8,667.02 surplus. By operation of law, upon the sale of Brown’s residence, Dellinger’s lien was transferred automatically to the surplus funds.
 
 See, e.g., Federal Land Bank of Springfield v. United
 
 
 *121
 

 States,
 
 21 A.D.2d 936, 937, 250 N.Y.S.2d 999, 1000 (3d Dep’t 1964). Pursuant to N.Y.Real Prop.Acts. Law § 1441 (McKinney 1979),
 
 [1]
 
 the surplus was deposited with the Onondaga County Commissioner of Finance (“Commissioner”) as the representative of the New York Supreme Court, whereupon title to the funds passed to the Commissioner “for the benefit of interested parties.” N.Y.Civ.Prac.Law § 2601(c) (McKinney 1974).
 

 In March 1980, Brown filed in the Onondaga County Clerk’s Office, pursuant to N.Y.Real Prop.Acts Law § 1442 (McKinney 1979),
 
 [2]
 
 a notice of claim to the surplus funds. Her notice stated that the surplus funds were not subject to the liens of creditors because she exempted the funds from such liens pursuant to a state law homestead exemption, N.Y.Civ.Prac.Law § 5206(a) (McKinney 1978).
 
 [3]
 
 In May 1980, Dellinger filed notice of her claim to $1,710.15 of the surplus funds.
 

 In the meantime, on April 3, 1980, Brown and her husband had filed a joint petition in bankruptcy under Chapter 7 of the Bankruptcy Code, listing the surplus funds among Brown’s assets. Brown also listed the surplus funds on her bankruptcy exemption schedules as property exempt under New York law, and thereby exempt under the Code,
 
 see
 
 Bankruptcy Code § 522(b)(2)(A), from her estate.
 

 On the premise that the surplus funds were exempt property, Brown then moved in New York Supreme Court to have the Commissioner transfer the surplus funds to her. Dellinger opposed this motion, claiming that she possessed a superior right to the surplus funds because of her 1978 judgment lien. The New York Supreme Court granted Brown’s motion, and ordered the Commissioner to release to her the surplus funds, minus $1,123.64 to satisfy an uncontested claim of the Internal Revenue Service. Pursuant to this order, the Commissioner paid Brown $7,543.38, which she apparently has retained until the present. On appeal by Dellinger, however, the Appellate Division reversed, ruling that N.Y.Civ.Prac.Law § 5206 did not allow the exemption of the proceeds of a foreclosure sale of a homestead.
 
 See First Federal Savings and Loan Association of Rochester v. Brown,
 
 78 A.D.2d 119, 122-23, 434 N.Y.S.2d 306, 309-10 (4th Dep’t 1980)
 
 (“First Federal
 
 I”). The court stated, however, that its decision “should not be construed as foreclosing any right ... [Brown] may possess within the purview of
 
 *122
 
 the [Bankruptcy [C]ode.”
 
 Id.
 
 at 124, 434 N.Y.S.2d at 310.
 

 Upon learning that the state homestead exemption was unavailable, Brown sought and obtained permission in the bankruptcy court to amend her exemption schedules to claim the surplus funds as exempt under the federal
 
 [4]
 
 homestead exemption provided in Bankruptcy Code § 522(d)(1). Eventually, the bankruptcy court, doubting whether funds — as contrasted with the real estate whose sale generated the funds — properly qualified for the homestead exemption provided by § 522(d)(1), allowed Brown to reamend her exemption schedules to claim the $7900 “catchall” exemption provided in § 522(d)(5).
 

 In the meantime, despite the bankruptcy court’s order granting Brown a federal exemption, Dellinger returned to the New York Supreme Court in June 1981, and, pursuant to N.Y.Real Prop.Acts. Law § 1361(2), successfully moved for the appointment of a referee to decide the proper distribution of the surplus funds. Brown appealed, contending that the appointment of a referee violated both the bankruptcy court’s exclusive jurisdiction over the property of her estate and the automatic stay provision of Bankruptcy Code § 362(a). The Appellate Division affirmed. It construed the term “property of the estate,” as used in § 541 of the Bankruptcy Code, to “include[] only the debtor’s equity in property which has been the subject of foreclosure proceedings.”
 
 First Federal Savings & Loan Association of Rochester v. Brown,
 
 86 A.D.2d 963, 963, 448 N.Y.S.2d 302, 303 (4th Dep’t 1982)
 
 (“First Federal II’).
 
 The court ruled as follows:
 

 Brown’s bankruptcy estate includes an interest in the surplus money only to the extent that there is a balance remaining after the liens on such surplus money have been ascertained and paid. The interest of the bankrupt’s estate in the surplus money, if any, does not ripen until the surplus money proceedings have been completed.
 

 Id.
 

 Brown promptly returned to the bankruptcy court, seeking a declaration that the surplus funds were exempt property and were accordingly free of any right, title, or interest asserted by Dellinger. In an opinion reported as
 
 In re Brown,
 
 22 B.R. 844 (Bkrtcy.N.D.N.Y.1982), the bankruptcy court ruled that although the surplus funds had been deposited with the Commissioner and title to these funds had vested in the Commissioner “for the benefit of interested parties,” N.Y.Civ.Prac.Law § 2601(c), Brown had a sufficient interest in the funds within the meaning of Bankruptcy Code § 541(a)(1) to entitle her to bring the funds into her bankruptcy estate. The bankruptcy court thus disagreed with the ruling of the Appellate Division in
 
 First Federal II
 
 and refused to give it effect. The bankruptcy court ruled further that Brown was entitled to exempt the surplus funds from her bankruptcy estate pursuant to § 522(d)(5), and to invoke § 522(f)(1) to avoid the fixing of Dellinger’s judicial lien on the funds.
 

 Dellinger appealed to the district court, which, agreeing with the reasoning of the bankruptcy judge, affirmed the bankruptcy court’s order.
 

 This appeal followed.
 

 DISCUSSION
 

 On appeal Dellinger’s tersely stated positions (consisting of four brief headings, with a total of seven citations, and no argument) appear to be (1) that the surplus funds did not become property of Brown’s bankruptcy estate — and thus could not be claimed by Brown as exempt property — because (a) the funds had been deposited with the state court’s Commissioner for distribution to claimants, or (b) the prebankruptcy docketing of Dellinger’s judicial lien de
 
 *123
 
 prived Brown of any further legal or equitable interest in the surplus funds; (2) that even if Brown had an interest in the funds she was not entitled to a state exemption; and (3) that even if Brown could claim the surplus funds as exempt property, Dellinger’s judicial lien survived both the exemption and Brown’s discharge in bankruptcy. We find no merit in any of these contentions.
 

 A.
 
 The Surplus Funds as “Property of the Estate”
 

 We reject Dellinger’s contention that the surplus did not become a part of Brown's bankruptcy estate by reason of either Del-linger’s judgment lien or the transfer of the funds to the Commissioner because we conclude that notwithstanding these events Brown retained a sufficient interest in the funds to constitute an “equitable interest” within the meaning of § 541(a)(1) of the Bankruptcy Code. Under § 541(a)(1), the filing of a petition in bankruptcy creates an estate consisting of “all legal or equitable interests of the debtor in property as of the commencement of the case.” The phrase “all legal or equitable interests of the debt- or in property” has been given the broadest possible interpretation, and the term “equitable interest[]” has generally not been interpreted as limited to a debtor’s equity in property. Rather, the overwhelming weight of authority holds that even if liens on the property exceed the market value of the property, leaving the debtor with no equity in it, the debtor nonetheless has an “equitable interest” in the property.
 
 See, e.g., In re Chesanow,
 
 25 B.R. 228, 230 (Bkrtcy.D.Conn.1982);
 
 In re Cole,
 
 15 B.R. 322, 323-25 (Bkrtcy.W.D.Mo.1981);
 
 In re Lovett,
 
 11 B.R. 123, 124-25 (D.C.W.D.Mo.1981),
 
 vacated on other grounds,
 
 23 B.R. 760 (D.C.W.D.Mo.1982);
 
 In re Kursh,
 
 9 B.R. 801, 802-04 (Bkrtcy.W.D.Mo.1981) (collecting cases);
 
 In re Curry,
 
 5 B.R. 282, 291-92 (Bkrtcy.N.D.Ohio 1980),
 
 aff'd,
 
 11 B.R. 716 (D.C.N.D.Ohio 1981),
 
 rev’d on other grounds,
 
 698 F.2d 298 (6th Cir.1983).
 
 Contra In re Miller,
 
 8 B.R. 43, 46-47 (Bkrtcy.W.D.Mo.1980) (“interest” in property confined to equity in property). As the court in
 
 Lovett
 
 observed, “[wjhile the equity is thus an ‘interest,’ it is not necessarily the only interest of the debtor in the property.” 11 B.R. at 125.
 

 Further, the “legal or equitable interests” of a debtor have been held to encompass an interest that is strictly contingent.
 
 See, e.g., In re Greer Stump Plumbing, Inc.,
 
 9 B.R. 181, 183-85 (Bkrtcy.Ariz.1981);
 
 cf. In re McConaghy,
 
 15 B.R. 480, 481 (Bkrtcy.E.D.Va.1981).
 
 See also Segal v. Rochelle,
 
 382 U.S. 375, 379-81, 86 S.Ct. 511, 514-15, 15 L.Ed.2d 428 (1966) (ruling under § 70a of the Bankruptcy Act of 1898 that debtor’s interest in tax refunds that might be generated through tax carry-backs constitutes property of debtor even though interest is contingent).
 

 These broad interpretations of “equitable interest” find strong support in the legislative history of the Bankruptcy Code. In describing § 541, the reports of the Senate and House of Representatives Committees on the Judiciary observed that “[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property [and] causes of action ....” H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977),
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5868. These reports went on to approve specifically the result reached in
 
 Segal v. Rochelle, supra,
 
 which held that the debtor had a cognizable interest in contingent claims for tax refunds. H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5868.
 

 In the present case, we agree with the district and bankruptcy courts that Brown had an equitable interest in the surplus funds within the meaning of § 541 of the Code. The funds were generated by the bank’s foreclosure on her home. To the extent that no other creditors had an
 
 *124
 
 interest in the residence, Brown as the owner of the equity of redemption would presumably have been entitled to have the surplus funds returned to her.
 
 See Coffey v. Roe,
 
 52 Misc.2d 1003, 1005-06, 277 N.Y.S.2d 743, 746 (Sup.Ct. Delaware Co.1967) (dictum). Even if there were other creditors, if those creditors did not file claims with the Commissioner, Brown would have been able to reclaim so much of the surplus as was not claimed. So far as we are aware, when Brown filed her bankruptcy petition on April 3, 1980, no creditors had filed claims with the Commissioner. Thus, at the time the bankruptcy estate was created, Brown had a clear contingent interest in the entire $7,543.38 surplus.
 
 [5]
 
 The properly broad reading of § 541 thus requires that we recognize that this interest became part of the bankruptcy estate.
 

 The fact that title to the funds had previously passed to the Commissioner did not prevent the funds from becoming part of Brown’s bankruptcy estate upon the filing of her petition. Section 541(a)(3) of the Code includes within its definition of “property of the estate” any property of the debtor, or the proceeds thereof, recovered from a “custodian” of the debtor’s property. A “custodian” is defined in § 101(10) as a “trustee, receiver, or agent under applicable law ... that is appointed or authorized to take charge of property of the debtor for the purpose of ... general administration of such property for the benefit of the debtor’s creditors.” Since in this case the Commissioner had received the funds and title to them “for the benefit of interested parties,” N.Y.Civ.Prac.Law § 2601(c), we conclude that the Commissioner was a “custodian” of Brown’s property within the meaning of § 101(10) of the Code. Hence, the surplus funds held by the Commissioner were the property of the bankruptcy estate.
 
 See also
 
 4
 
 Collier on Bankruptcy
 
 ¶ 543.01, at 543-2 (15th ed. 1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977),
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5963, 6326; S.Rep. No. 989, 95th Cong., 2d Sess. 84-85 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5870-71.
 

 We thus agree with the bankruptcy court and district court that the orders of the state courts for the appointment of a referee to determine the appropriate distribution of the surplus funds,
 
 see First Federal II,
 
 intruded on the bankruptcy court’s exclusive jurisdiction to resolve competing claims to the property of the estate.
 
 See, e.g., In re State of Missouri,
 
 7 B.R. 974, 980 (D.C.E.D.Ark.1980),
 
 aff'd,
 
 647 F.2d 768 (8th Cir.1981). The bankruptcy court was therefore justified in denying any effect to those orders.
 
 See Kalb v. Feuerstein,
 
 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940).
 

 B.
 
 The Exemption
 

 Dellinger next appears to argue that Brown was not entitled to exempt the surplus funds from her bankruptcy estate because the state court ruled in
 
 First Federal I
 
 that the state homestead exemption did not apply. Her argument must be rejected because Brown was permitted to amend her bankruptcy petition to claim an exemption under federal, rather than state, law. Dellinger has not challenged the order permitting this amendment, and her argument based on the unavailability of the state exemption is thus moot.
 

 C.
 
 Effect of the Exemption on the Judicial Lien
 

 Finally, Dellinger apparently suggests that since the judgment lien preceded Brown’s bankruptcy, under Bankruptcy Code § 522(c)(2)(A) the lien survives both Brown’s exemption of the funds and her discharge in bankruptcy. It is true of course that upon the filing of a petition in bankruptcy, the bankruptcy estate can have no greater interest in property included in it than the debtor had when the petition was filed.
 
 See, e.g.,
 
 4
 
 Collier on Bankruptcy, supra,
 
 ¶ 541.01, at 541-6. It is also true that under § 522(c)(2)(A) many prebankruptcy liens will survive both the
 

 
 *125
 
 inclusion of the encumbered property in the estate and the debtor’s claim of an exemption for the property. The section that governs this case, however, is § 522(f)(1).
 

 Section 522(f)(1) provides, in pertinent part, that “the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such a lien is ... a judicial lien.” Nearly all of the courts that have construed this section have concluded that it should be applied according to its terms. That is, the debtor is permitted, even if he lacks an equity interest in the property, to avoid the fixing of a judicial lien on the property if that avoidance would allow him to enjoy an exemption provided by § 522(b).
 
 See, e.g., In re Chesanow, supra,
 
 25 B.R. at 230-31;
 
 In re Cole, supra,
 
 15 B.R. at 325;
 
 In re Lovett, supra,
 
 11 B.R. at 124-25;
 
 In re Kursh, supra,
 
 9 B.R. at 802-04 (collecting cases);
 
 In re Curry, supra,
 
 5 B.R. at 291-92 (same conclusion as to certain nonjudicial liens).
 
 Contra In re Miller, supra,
 
 8 B.R. at 46-47 & n. 2. This interpretation is supported by the legislative history of the Code. Congress plainly expressed its intent to protect a debtor’s ability to exempt property under § 522(d) by providing that a debtor may avoid any judicial lien under § 522(f)(1) “to the extent that the property could have been exempted in the absence of the lien.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6318; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5862.
 
 See generally In re Kursh, supra,
 
 at 803-04;
 
 In re Hill,
 
 4 B.R. 310, 315-16 (Bkrtcy.N.D.Ohio 1980).
 

 Since Dellinger’s lien was a judicial lien, and since in the absence of that lien Brown would have been able to exempt the surplus funds from her bankruptcy estate, we conclude that Brown was empowered by the terms of § 522(f)(1) to avoid the lien in order to enjoy the exemptions provided by § 522(b).
 
 [6]
 
 Thus avoided, Dellinger’s lien does not survive.
 

 CONCLUSION
 

 The order of the district court is affirmed.
 

 [1]
 

 . Section 1441 of N.Y.Real Prop.Acts. Law provided as follows:
 

 An attorney or other person who receives any money, arising upon a sale made as prescribed in this article, must, within ten days after he receives it, pay into the supreme court the surplus, exceeding the sum due and to become due upon the mortgage and the costs and expenses of the foreclosure, in like manner and with like effect as if the proceedings to foreclose the mortgage were taken in an action brought in the supreme court and triable in the county where the sale took place.
 

 [2]
 

 . Section 1442 of N.Y.Real Prop.Acts. Law provided as follows:
 

 A person who had, at the time of the sale, an interest in or lien upon the property sold, or a part thereof, may, at any time before an order is made as prescribed in section 1444, file in the office of the clerk of the county where the sale took place a petition stating the nature and extent of his claim, and praying for an order directing the payment to him of the surplus money, or a part thereof.
 

 Section 1444 of N.Y.Real Prop.Acts. Law provided that after the filing of petitions and the determinations of the amount due each petitioner and the priorities of the petitions, the court shall make an order "for the distribution of the surplus money, as justice requires."
 

 [3]
 

 .Section 5206(a) of N.Y.Civ.Prac.Law provided as follows:
 

 Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:
 

 1. a lot of land with a dwelling thereon,
 

 2. shares of stock in a cooperative apartment corporation, or
 

 3. units of a condominium apartment.
 

 But no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments.
 

 [4]
 

 . Pursuant to § 522(b)(1) of the Code, the New York state legislature has denied its residents who file a petition in bankruptcy on or after September 1, 1982, the option of employing the federal property exemptions provided in § 522(d) of the Code.
 
 See
 
 N.Y.Debt. & Cred. Law § 284 (McKinney Supp.1982). Since Brown filed her petition before September 1, 1982, she was able to employ the federal exemptions.
 

 [5]
 

 . A much closer question would be presented had Dellinger’s claim been presented to the Commissioner before the bankruptcy estate had been created.
 

 [6]
 

 . The Supreme Court has construed the lien avoidance provisions of Bankruptcy Code § 522(f)(2) as not authorizing avoidance of a creditor's “nonpossessory, nonpurchase-money security interest,"
 
 id.,
 
 acquired prior to November 6, 1978, the date of the enactment of the current Bankruptcy Code, because of the substantial possibility that the retroactive avoidance of creditors’ liens might violate the Fifth Amendment’s prohibition against the taking of private property without just compensation.
 
 See United States v. Security Industrial Bank,
 
 459 U.S. 70, 74-82, 103 S.Ct. 407, 410-14, 74 L.Ed.2d 235 (1982). At least one bankruptcy court in this Circuit has concluded that this reasoning should not apply to a judicial lien under New York law when the foreclosure of the encumbered property did not occur before November 6, 1978.
 
 See In re Lattimore,
 
 12 B.R. 111, 113-14 (Bkrtcy.W.D.N.Y.1981) (concluding that the creditor’s interest in the property does not vest until foreclosure). Dellinger’s judicial lien attached before November 6, 1978, and First National’s forclosure took place after November 6, 1978. Dellinger has not raised below or on appeal the issue of whether § 522(f)(1) should be controlled by
 
 Security Industrial Bank.
 
 Accordingly, we express no view as to the correctness of
 
 In re Lattimore
 
 or as to the applicability of its analysis to a situation in which the encumbered property has been sold and the creditor’s lien transferred to the surplus funds resulting from the sale.