In re Julian Albert SPIRO, Debtor.

**Arthur Gray, Movant,**

v.

**Richard M. Coan, Bankruptcy Trustee, Julian Spiro, Respondents.**

No. 02–51095.

United States Bankruptcy Court, D. Connecticut.

Feb. 10, 2004.

Julian Albert Spiro, c/o Prudential Ct. Realty, Danbury, CT, pro se.

Peter N. Bazaid, Esq., Danbury, CT, for Movant Arthur Gray.

## MEMORANDUM AND ORDER ON MOTION FOR RELIEF FROM STAY

ALAN H.W. SHIFF, Bankruptcy Judge.

Arthur Gray, a creditor and the debtor's former landlord, has moved for relief from the automatic stay, so that he may file a motion in the Connecticut Superior Court at Danbury for a determination that he is entitled to a fund of use and occupancy payments held by that court in the aggregate amount of $15,750 (the "Fund"). For the reasons that follow, any interest that this bankruptcy estate might have had in the Fund has been divested by the final judgment of the Superior Court in Gray's favor and the subsequent dismissal of the debtor's appeal.

## BACKGROUND

In August 1993, the debtor leased a residential condominium unit from Gray. The debtor failed to pay the rent in the amount of $1,750.00 due on March 1, 2001. On July 3, 2001, Gray commenced a summary process action for possession in the state court against the debtor to regain

possession of the unit.[1] On July 30, 2001, Gray filed a motion for use and occupancy payments. Contrary to the debtor's argument, it is apparent from the record of the state court proceeding that on August 13, 2001, his objection was overruled and he was to commence making use and occupancy payments on August 14, 2001 in the amount of $1,750 per month. *See State Court Motion for Use and Occupancy Payments.* Moreover, that conclusion conforms with Connecticut law which requires such payments. *See* Conn Gen.Stat. § 46a–26(b).

On October 29, 2001, the state court granted Gray's motion for immediate possession. The debtor appealed on November 2, 2001. On September 5, 2002, the debtor commenced this chapter 7 case. On September 18, 2002, Gray filed a motion for relief from the automatic stay, *see* 11 U.S.C. § 362, so that he could participate in the appeal and continue his eviction action. That motion was granted on October 30, 2002. On December 5, 2002, the Appellate Court of the State of Connecticut dismissed the appeal. The Superior Court thereupon ordered the debtor to vacate the unit by December 9, 2002.

The debtor made use and occupancy payments from August 17, 2001 through April 24, 2002, in the aggregate amount of $15,750, which is currently held by the clerk of the Superior Court pursuant to Conn. Gen.Stat. § 47a–26b. The debtor objects to Gray's motion for relief from the automatic stay, claiming that the Fund is property of his bankruptcy estate as to which this court has exclusive jurisdiction.

## DISCUSSION

### I

■ The debtor confuses this court's exclusive jurisdiction over the disposition of

property of a bankruptcy estate with the nonexclusive jurisdiction to determine the definition of estate property. Indeed, in the absence of contravening federal law, bankruptcy courts are obligated to look to state law to determine what, if any, interest an entity, including the debtor, has in property. As the Supreme Court explained:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and *to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."*

*Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (*quoting Lewis v. Manufacturers Nat'l Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)) (emphasis added); *see also In re Morton,* 866 F.2d 561, 563 (2d Cir.1989).

■ The bankruptcy estate, which is created upon the filing of a bankruptcy petition, consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Federal courts have reflected the intent of Congress to maximize the assets of bankruptcy estates by giving that section an expansive reach. *In re Brown,* 734 F.2d 119, 123 (2d Cir.1984). So, for example, estate property has been held to encompass an interest that is strictly contingent. *Id.*

---

**1.** The state court action was captioned *Gray v.*    *Spiro,* Docket No.: SP01–10377 S.

The debtor cited to *Brown* in his earlier papers [2] for the proposition that the Fund is within the exclusive jurisdiction of this court as property of the estate. That argument overlooks the fundamental differences between *Brown* and this case. In *Brown*, the court held that surplus funds from a pre-bankruptcy New York state foreclosure sale were property of the debtors' estate notwithstanding the fact that the money was transferred to a state court commissioner for distribution to a judgment lien creditor. *Id.* The court reasoned that since the surplus money belonged to the prepetition debtor, it became property of his estate over which the bankruptcy court had exclusive jurisdiction upon the commencement of his bankruptcy case.

In contrast, the Fund did not belong to the prepetition debtor. Rather, it was established under state law for the purpose of assuring that there would be money available to Gray, as a landlord, for the period of possession during the eviction proceedings if Gray ultimately succeeded in his eviction action. Accordingly, any *interest* the prepetition debtor had in the Fund was subject to complete divestiture, and although that *interest* became property of the bankruptcy estate, the Fund itself would not be unless there is a determination under state law to that effect.

■ In helping to clarify the distinction between the estate's interest in the Fund with ownership of the Fund itself, it is worth noting the striking similarity between an appellate bond and the use and occupancy payments ordered under state law. In fact, once an appeal is filed, the use and occupancy payments take the place of the appellate bond required by Connecticut law. *See* Conn. Gen.Stat. § 47a–26e. Moreover, the failure at any time to make ordered use and occupancy payments warrants judgment against the tenant. *See* Conn. Gen.Stat. § 47a–26b(d); *Young v. Young*, 733 A.2d 835, 843, 249 Conn. 482, 496–97 (1999). Similarly, when an appellate bond is ordered, failure to pay the bond may result in dismissal of the appeal. *See, e.g., Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir.1987). Therefore, an appellate bond and use and occupancy payments serve an identical purpose, *i.e.*, to protect the financial interest of the appellee/landlord during the appellate period.[3] *See Young*, 733 A.2d at 843, 249 Conn. at 496–97.

■ Based on their similarity to the use and occupancy payments, it is also useful to examine bankruptcy law on a debtor's interest in an appellate bond. Bankruptcy law provides that although a debtor has an interest in an appellate bond, that interest is "subject to divestiture if the debtor is unsuccessful once the appeal process has been completed." *In re Keene Corp.*, 162 B.R. 935, 942 (Bankr.S.D.N.Y.1994); *see also Willis v. Celotex Corp.* 978 F.2d 146, 149 (4th Cir.1992); *In re Celotex Corp.*, 128 B.R. 478, 482 (Bankr.M.D.Fla.1991). It follows then that the underlying bond itself is not property of a bankruptcy es-

---

**2.** The issues presented here were originally the subject of a December 23, 2002 motion by Gray. At that time, the debtor was represented by Ira Charmoy, Esq., who filed memoranda on issues that are relevant to the instant motion. On October 14, 2003, an order entered granting attorney Charmoy's motion to withdraw. The court has considered the arguments addressed in the memoranda filed by attorney Charmoy in this decision.

**3.** *See generally* 20 Moore's Federal Practice § 301.10[1] (3d ed. 2003) ("The purpose of [an appellate] bond for costs is to ensure that the appellee will be paid any costs that are awarded to him if the appellant is unsuccessful on the appeal."); 20 Moore's Federal Practice § 308.31 ("The purpose of a [supersedeas] bond is to ... protect[ ] the prevailing party against any loss he may sustain.").

tate unless and until the debtor's appeal succeeds.

■ Since the debtor's appeal was dismissed and the Superior Court ordered his eviction, the next step would be a ruling on the instant motion for relief from the automatic stay so Gray could return to the Superior Court for a determination that he, and not the debtor, has a right to the Fund. The court determines, however, that that procedure would have the potential to compound this litigation, unnecessarily burden the state court, and needlessly cause Gray to expend more money in an attempt recover the payments. The better course is for this court to consider the question of whether Gray has a right to that money, and for that determination this court turns to applicable state law and basic principles of equity.

## II

Conn. Gen.Stat. § 47a–35b provides:
Upon final disposition of the appeal, the trial court shall hold a hearing to determine the amount due each party from the accrued payments for use and occupancy and order distribution in accordance with such determination. Such determination shall be based upon the respective claims of the parties arising during the pendency of the proceedings after the date of the order for payments and shall be conclusive of those claims only to the extent of the total amount distributed.

■ The debtor challenged the applicability of Conn. Gen.Stat. § 47a–35b by claiming that Conn. Gen.Stat. § 47a–35a, which involves the payment of a bond or rent when an appeal is taken, was not complied with. His argument was based on the claim that the state court never ordered the use and occupancy payments, but as noted, *supra* at 144, that argument has been rejected. The debtor further argued that Conn. Gen.Stat. § 47a–35a is

irrelevant as it only provides for a bond, which the debtor did not pay. That assertion ignores Conn. Gen.Stat. § 47a–26e, which provides that if "an order of payments is in effect on the date of judgement in the trial court and an appeal is taken by any party, the order shall remain in effect and compliance with the order shall constitute satisfactory compliance with the bond requirement of 47a–35a." Since the order for the use and occupancy payments entered prior to the Superior Court's decision for possession and remained in effect during the appeal, the debtor's challenge is unavailing and a determination of ownership of the fund must be defined by Conn. Gen.Stat. § 47a–35b.

■ Since the Appellate Court dismissed the debtor's appeal, the state trial court's order of immediate possession warrants the conclusion that the debtor's nonpayment of rent was unjustified. Therefore, both Connecticut law and basic principles of equity dictate that Gray is entitled to the entire Fund. A contrary result would have the effect of granting the debtor a period of rent-free possession, in direct contradiction of the purpose of state law and which is exactly the sort of "windfall merely by reason of the happenstance of bankruptcy" the Supreme Court has cautioned against in *Butner*, 440 U.S. at 54–55, 99 S.Ct. 914.

**Accordingly,**

**IT IS ORDERED** that the Fund is the property of Gray and is not property of the estate; and

**IT IS FURTHER ORDERED** that the motion for further relief from stay, to the extent that it is still necessary, is granted to allow Gray to recover the Fund, currently held by the clerk of the Connecticut Superior Court. .