**In re Kenneth C. MOYER, Lydia S. Moyer, Debtors.**

**Kenneth C. MOYER, Lydia S. Moyer, Movants,**

v.

**FLEET FINANCE f/k/a Southern Discount, Respondent.**

**Bankruptcy No. 83–05715A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 16, 1984.

Rose H. Staples, Paul C. Parker & Associates, Decatur, Ga., for movants/debtors.

John E. Tomlinson, Atlanta, Ga., for respondent.

ORDER

W. HOMER DRAKE, Bankruptcy Judge.

On January 11, 1984, the debtors, Kenneth C. and Lydia S. Moyer, filed a motion pursuant to Bankruptcy Code § 522(f)(2) to avoid a nonpossessory, nonpurchase-money security interest in the debtors' household goods. The lienholder, Fleet Finance, Inc. ("Fleet Finance"), filed its response on January 23, 1984. Following a hearing on March 6, 1984, this matter was taken under advisement.

The parties have stipulated to the material facts: The debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 30, 1983, at which time they were indebted to Fleet Finance in the amount of $3,248.00. Fleet Finance's claim of $3,248.00 is secured by a nonpossessory, nonpurchase-money security interest in the debtors' household goods. The value of the encumbered household goods is $1,000.00.

Section 522(f) provides in relevant part: (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.     .     .     .     .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods … appliances …;

According to the parties in the instant proceeding, the availability of the lien avoidance mechanism of Bankruptcy Code § 522(f) turns on an interpretation of the Georgia exemption statute.

Bankruptcy Code § 522(b)(1) enables a state to opt out of the federal exemption scheme set forth in Bankruptcy Code § 522(d). Upon the enactment of O.C.G.A. § 44–13–100(b), the Georgia legislature has so elected to prohibit an individual debtor whose domicile is in Georgia from applying or utilizing the federal exemptions found in § 522(d) of the Bankruptcy Code. Accordingly, the debtors in the case *sub judice* may not avail themselves of the exemption stated in § 522(d)(3) of the Bankruptcy Code. However, a parallel exemption was provided by the Georgia legislature in O.C.G.A. § 44–13–100(a)(4).

O.C.G.A. § 44–13–100(a)(4) states as follows:

(a) In lieu of the exemption provided in Code Section 44–13–1, any debtor who is a natural person may exempt, pursuant to this Article, for purposes of bankruptcy, the following property:

.    .    .    .    .

(4) The debtor's interest, not to exceed $200.00 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor. The exemption of the debtor's interest in the items contained in this paragraph shall not exceed $3,500.00 in total value;

The question before the Court is whether the term "debtor's interest" means that the exemption under Georgia law is available only to the extent that the debtor has equity in the subject household goods, etc.

The precise question before the Court was answered by the Eleventh Circuit Court of Appeals in the case of *In re Maddox*, 713 F.2d 1526 (11th Cir.1983), wherein the Court affirmed the holding of the District Court that the state law exemptions protected by § 522(f) are not limited to the equity owned by the debtor in the property. Fleet Finance argues that *Maddox* is no longer controlling given a recent interpretation of the homestead exemption provision in O.C.G.A. § 44–13–100(a)(1) by the Georgia Court of Appeals in the case of *Wallis v. Clerk, Superior Court of DeKalb County*, 166 Ga.App. 775, 305 S.E.2d 639 (1983).

In *Wallis*, the Georgia Court of Appeals stated as follows:

A bankrupt is entitled to claim a homestead exemption only from his "aggregate interest" in real property. OCGA § 44–13–100(a) (Code Ann. § 51–1301.1). This means that "only the unencumbered portion of the property is to be counted in computing the 'value' of the property for purposes of determining the exemption." 9 Am.Jur.2d 526, Bankruptcy § 315. Appellant had no aggregate interest in the property against which to assert his claimed homestead exemption.

*Wallis v. Clerk, Superior Court of DeKalb County*, 166 Ga.App. at 776, 305 S.E.2d 639. The Court finds at least two reasons for concluding that *Wallis* does not undermine the decision by the Eleventh Circuit Court of Appeals in *Maddox*.

First, *Wallis* interpreted the Georgia homestead exemption, which was not at issue in *Maddox*. Therefore, any difference between *Wallis* and *Maddox* may be attributable to the distinct policy considerations underlying the two different exemptions discussed therein. Second, the homestead exemption makes reference to the "debtor's aggregate interest" in property, whereas the limited exemption in household goods refers to the "debtor's interest". Although the difference in wording is slight, when considered in light of the rationale behind the exemption in which the selected language is used, the difference must be regarded as significant.

The Georgia Court of Appeals in *Wallis* logically concluded that, in applying the $5,000.00 homestead exemption, the "debtor's aggregate interest" should mean the debtor's equity. To have concluded other-

wise would mean that a debtor could use the $5,000.00 homestead exemption to diminish a lienholder's recourse against the homestead to the extent of $5,000.00. Such a result would be clearly detrimental to the lienholder and might adversely impact upon the availability of credit from mortgage lenders.

Conversely, the lien avoidance provision of § 522(f) of the Bankruptcy Code, which is compatible with the exemption found in § 522(d)(3) of the Bankruptcy Code and the parallel state exemptions for household goods, etc., does not have such a directly adverse effect upon a lienholder's interest. Congress contemplated that the value of collateral upon which a lien would be avoided under § 522(f) would be nominal to the creditor relative to the potentially devastating effect of repossession of the collateral upon the individual debtor and his dependents. The legislative history to Bankruptcy Code § 522(f), quoted in *Maddox*, states as follows:

> [T]he bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property, and any nonpurchase-money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all the debtor's household goods as a means of obtaining payment.

> In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are forced into payments they simply cannot afford to make.

> The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase-money security interests in household goods.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 127 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, pp. 5787, 6087–8.

Fleet Finance also relies upon the opinion by the Sixth Circuit Court of Appeals in *In re Pine*, 717 F.2d 281 (6th Cir.1983), to support its position that the phrase "debtor's interest" in O.C.G.A. § 44–13–100(a)(4) refers to the debtor's equity in the property. The Court in *Pine* concluded that both the Tennessee and Georgia exemption statutes preclude lien avoidance under § 522(f) of the Bankruptcy Code. Therefore, creditors in two Chapter 7 cases were permitted to retain nonpossessory, nonpurchase-money security interests in the debtors' household goods. This Court is not persuaded by the logic of *Pine*.

First, *Pine* is not binding upon this Court. To the extent that *Maddox* is contrary to *Pine*, this Court must follow *Maddox*. Second, the debtors' brief accurately points out several deficiencies in the rationale of *Pine*. No further elaboration on *Pine* is necessary, however, because *Maddox* is the controlling precedent in this Circuit.

On the basis of the foregoing, the debtors' motion to avoid a nonpossessory, non-purchase-money security interest shall be and is hereby GRANTED.

IT IS SO ORDERED.