## In re Nicolas Dodd BERRONG, a/k/a Nicolas D. Berrong, a/k/a Nik Berrong, Debtor.

### Bankruptcy No. 85 B 01705 J.

United States Bankruptcy Court, D. Colorado.

Sept. 20, 1985.

Daniel W. Dean, Ft. Collins, Colo., for debtor.

Ann S. Irwin, Cole, Hecox, Tolley, Keene & Beltz, P.C., Colorado Springs, Colo., for George Kalman.

## ORDER AVOIDING LIEN

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

This is an action to avoid a judicial lien on Debtor's personal residence under 11 U.S.C. § 522(f). The main issue presented concerns the extent to which a judicial lien on exempted property is subjected to Debtor's avoidance powers when the Debtor has no equity in the property.

The controversy arises from the following facts: The fair market value of Debtor's personal residence is $55,000.00. George Kalman ("Kalman"), a judgment creditor of the Debtor possesses a judicial lien against the personal residence of the Debtor in the amount of $27,940.39.[1]

The property is encumbered by three consenual mortgages which are senior to Kalman and which total $84,782.11.[2] Excluding Kalman's judicial lien, the secured indebtedness on Debtor's residence exceeds the fair market value of the property by $29,782.11. Debtor claims a homestead exemption in the real estate of $10,000.00.

---

1. The lien arises from a judgment entered against the Debtor on May 4, 1983. A transcript of that judgment was properly recorded in the Larimer County records on September 19, 1983. Section 13–52–102, C.R.S. (1973) provides that a judicial lien attaches to nonexempt real property of the debtor when a transcript of the judgment docket is filed with the County Recorder where the real property lies.

2.

| | |
|---|---|
| The first mortgage held by Central Mortgage & Investment | Totals $8,500.00 |
| The second mortgage held by First Interstate Bank | Totals $27,230.11 |
| The third mortgage held by Mary Berrong | Totals $49,000.00 |

*See,* § 38–41–101, C.R.S. (1973).[3] The numerical figures unequivocally reveal that Debtor holds no equity in the property in question.

The judgment lienor claims his lien is voidable only to the extent of Debtor's equity in the exempt property. 11 U.S.C. § 522(f)(1) states:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien ...

Thus, if Debtor has no equity in the property, the lien does not impair an exemption to which the Debtor would otherwise be entitled and the judgment lien cannot be avoided. Abundant case law supports Kalman's argument. *See, In re LaRue,* 13 B.R. 846 (Bankr.N.D.Ill.1981); *In re Canady,* 9 B.R. 428 (Bankr.Conn.1981); *In re Redin,* 14 B.R. 727 (Bankr.Colo.1981); *In re Boteler,* 5 B.R. 408 (Bankr.S.D.Ala.1980); *In re Miller,* 8 B.R. 43 (Bankr.W.D.Mo.1980). These cases specifically limit the "interest of the debtor" to Debtor's "equity interest" in the property. "It is only the Debtor's equity, if any, in the property in question over and above valid liens which is capable of supporting an exemption under Code § 522." *In re Canady,* 9 B.R. 428, 431 (Bankr. Conn.1981).

There is even some legislative history supporting this line of cases:

> Under proposed 11 U.S.C. § 541, all property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate under this section. [§ 522(f)]. Property may be exempt even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for the purposes of the exemption. Thus, for example, a resi-

dence worth $30,000 with a mortgage of $25,000 will be exemptable to the extent of $5,000. ...

> *House Report No. 95–595, 95th Cong., 1st Sess. 360–1 (1977) reprinted in 1978, U.S. Code Cong. & Admin. News 5787, 6316.*

The phrase "interest of the debtor" is not so dispositively defined. Indeed, there is overwhelming authority which does not follow the above line of cases, and which holds that a lien may be avoided regardless of whether or not the debtor has an equity in the property. *See, In re Hill,* 4 B.R. 310 (Bankr.N.D.Ohio 1980); *In re Van Gorkum,* 4 B.R. 689 (Bankr.S.D.1980); *In re Kursh,* 9 B.R. 801 (Bankr.W.D.Mo. 1981); *In re Mitchell,* 25 B.R. 406 (Bankr.N.D.Ga. 1982); *In re Schmidt,* 36 B.R. 144 (Bankr. N.D.Ohio 1983); *In re Moyer,* 39 B.R. 211 (Bankr.N.D.Ga. (1984); *In re Lillard,* 38 B.R. 433 (Bankr.W.D.Ark.1984); *In re Brown,* 734 F.2d 119 (2nd Cir.1984); *In re Hall* 752 F.2d 582 (11th Cir.1985).

■ Congress enacted 11 U.S.C. § 522(f) to protect the certain of the debtor's property, his discharge and ultimately his fresh start by permitting him to avoid certain types of liens on specifically enumerated property. Congress looked to the practice of creditors with judgment liens and non-purchase money security interests under the Bankruptcy Act and concluded that these creditors had an unfair advantage over the debtor. Congress intended that the debtor use the avoiding power under § 522(f) to eliminate this unfair advantage. *See, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 362 (1977); S.Rep. No. 95–989 95th Cong., 2nd Sess. 76 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787; In re Lillard,* 38 B.R. 433, 438–39 (Bankr.W.D. Ark.1984); *In re Kursh,* 9 B.R. 801, 803 (Bankr.W.D.Mo.1981)

The purpose of § 522(f) is to " ... [give] the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial

---

3. Colorado chose to opt out of the federal exemption, and this section sets forth the provi-   sions regarding the homestead exemption.

lien on exempt property and any non-purchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor." *H.R. No. 595, 95th Cong., 1st Sess. 126–27 (1977) reprinted in 1978 U.S. Code Cong. & Admin. News 6087–88*, as cited in *In re Schmidt* 36 B.R. 144, 146 (Bankr.N.D.Ohio 1983). Thus, in order to protect a debtor's ability to exempt property under § 522(d), or the parallel state exemption, a debtor should be permitted to avoid any judicial lien under § 522(f) "to the extent that the property could have been exempted in the absence of the lien." *In re Brown*, 734 F.2d 119, 125 (2nd Cir.1984), citing *H.R. Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6318. See generally, In re Hill*, 4 B.R. 310, 315–16 (Bankr.N.D. Ohio 1980).

Although the case law is divided, the overwhelming and more recent authority supports the interpretation that while equity is an interest, it is not necessarily the only interest of the debtor. *See*, cases cited *supra* p. 642. Under § 541(a)(1), the filing of a petition in bankruptcy creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." The phrase "all legal or equitable interest of the debtor in property" has been given the broadest possible interpretation, and the term "equitable interest has generally not been interpreted as limited to a debtor's equity in property. [Thus] ... even if liens on the property exceed the market value of the property, leaving the debtor with no equity in it, the debtor nonetheless has an "equitable interest in the property." *In re Brown*, 734 F.2d 119, 123 (2nd Cir.1984). *See, e.g., In re Chesanow*, 25 B.R. 228, 230 (Bankr.Conn.1982), *In re Cole* 15 B.R. 322 (Bankr.W.D.Mo.1981); *In re Lovett*, 11 B.R. 123, 124–25 (W.D.Mo.1981) *vacated on other grounds*, 23 B.R. 760 (D.C.W.D.Mo.

1982); *In re Hall*, 752 F.2d 582, 586 (11th Cir.1985).

Upon the filing of a petition in bankruptcy, the bankruptcy estate can have no greater interest in property included in it than the debtor had when the petition was filed. Further, many pre-bankruptcy liens will survive both the inclusion of the encumbered property in the estate and the debtor's claim of an exemption. Section 522(c)(2)(A). Kalman's lien did precede debtor's bankruptcy, but § 522(f)(1) is controlling in this instance and according to the terms of that section, a debtor, even if he lacks an equity interest in the property, is allowed to avoid the fixing of a judicial lien on that property if that avoidance would allow him to enjoy an exemption provided by 11 U.S.C. § 522(d) or the parallel state exemption which in this case is § 38–41–201 C.R.S. (1973). *See, In re Brown*, 734 F.2d 119, 124–25 (2nd Cir. 1984).

The judgment lienor's theory also involves some logistical problems. First, unless a judicial lien is specifically avoided by a debtor, the lien will survive the discharge in bankruptcy. The practical result is that at some future time, when the real property appreciates or the secured debt is reduced in value. The judgment lienor might initiate a foreclosure action. A debtor would continually be burdened by a creditor, waiting in the corner for the bell to ring to fight the debtor the moment the debtor has rehabilitated himself. This result thwarts and frustrates the fresh start concept of bankruptcy. *See generally*, Norton Bankruptcy Law Advisor (June, 1985) pp. 5–7.

Second, defining a debtor's equity in property is simply a guess—no matter how educated and logical that guess might be. Qualified real estate appraisers can estimate the value of property, but market fluctuations, varying interest rates and changing economic factors continually alter a property's value during the course of administering debtors estate. *See, In re Schmidt*, 36 B.R. 144, 146 (Bankr.N.D.Ohio 1983) for an elaboration of this issue. The

property's true value remains unknown until it is actually sold, and only when the value has thus been determined can the debtor's equity be stated with precision. This does not infer that § 522(f) is inoperative until the property is sold. On the contrary, the rights of the parties should be adjudicated as quickly and deliberately as possible. "The Court will not, if it believes a viable alternative exists, adjust the relative status of the parties by relying on an estimate of the debtor's equity which may prove to be inaccurate. That alternative is simply to void the judicial lien on the exempt property to the exact amount which the debtor may claim exempt." *Id.*

In this case, the judgment lien of Mr. Kalman is void to the extent the debtor has claimed an exemption on his property, which is $10,000.00.

One court analyzed the distinction between the type of exemption involved. In *In re Moyer*, 39 B.R. 211 (Bankr.N.D.Ga. 1984), the Court looked at the homestead exemption which refers to debtor's "aggregate interest" in property, versus the exemption in household goods which simply refers to "debtor's interest." Citing *Wallis v. Clerk*, 166 Ga.App. 775, 305 S.E.2d 639 (1983), the Court of Appeals in that case held that in applying the homestead exemption, the debtor's "aggregate interest" should mean "debtor's equity". To hold otherwise "would mean that a debtor could use the entire homestead exemption to diminish a lienholders recourse against the homestead to the full extent of the exemption. Such a result would be detrimental to the lienholder and might adversely impact upon the availability of credit from mortgage lenders." *In re Moyer*, 39 B.R. 211, 212–13 (Bankr.N.D.Ga.1984). Conversely, the exemption for household goods does not have a direct adverse effect upon a lien holders interest. The value of household goods upon which a lien could be avoided under § 522(f) is nominal to the creditor compared to the potentially devastating effect of repossession of the household goods upon the debtor and his family. Since the *Moyer* case involved an exemption in household goods anyway, the *Wallis* ruling

was not controlling, and the court in *Moyer* permitted the debtor to avoid a non-purchase money security interest in household goods where the debtor had no equity in such goods.

This case does involve a homestead exemption and this Court nevertheless rejects the reasoning of *Wallis*. "Aggregate interest" emphasizes the "entire number sum, mass or quantity of something." *See* Blacks Law Dictionary, 4th ed. defining the term aggregate. An "aggregate interest" contemplates by its own definition that interest means more than just equity, *i.e.*, an interest relating to debtor's right of redemption, a contingent interest, an interest in a cause of action. *See generally, In re Brown*, 734 F.2d 119, 123, (2nd Cir.1984); and *In re Chesanow*, 25 B.R. 228, 231 (Bankr.Conn.1981) wherein the court held that § 522(f) is intended to *create* equity by avoiding certain liens. Further, the Colorado homestead exemption does not even contain the phrase "aggregate interest."

■ The judgment lienor raised some other issues for this Court's consideration. First, Kalman argues that § 522(f) is not applicable to Chapter 13 cases. It is the finding of this Court that § 522(f) is specifically applicable to Chapter 13 proceedings by virtue of 11 U.S.C. 103(a).

> Chapters 1, 3, and 5 of this title apply in a case under Chapter 7, 11 or 13 of this title.

These two code sections when read together, indicate that the lien avoidance provisions of § 522(f) clearly apply to Chapter 13 proceedings. As a practical matter, Local Bankruptcy Rule 33 sets forth the specific procedural guidelines for implementing § 522(f) in Chapter 13 cases.

Second, Kalman asserts that § 1325(a)(5)(B) conflicts with § 522(f). Since § 522(f) is the more general provision it should give way to the more specific provision of 1325(a)(5)(B) which provides the following:

> (a) The Court shall confirm a plan if—
> (5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan; (or)

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

At least one court has held that § 1325(a)(5)(B) conflicts with § 522(f). *See, In the matter of Aycock*, 15 B.R. 728 (Bankr.E.D.N.C.1981). To support its finding, the court in *Aycock* relied upon the following distinction between Chapter 7 and 13 debtors. A Chapter 13 debtor receives a super discharge under 11 U.S.C. § 1328(a) and retains his property by the payment of his debts. A Chapter 7 debtor retains some property for purposes of having a real opportunity at a fresh start by way of exemptions in certain property.

This Court does not believe that §§ 1325(a)(5)(B) and 522(f) are inconsistent. "A lien is claimed only to the extent of the creditors interest in the *estate's* interest in such property (11 U.S.C. § 506d), and because exempt property is not property of the estate, these lien creditors would be unsecured creditors except to the extent that the value of these assets exceed the allowable exemptions applicable thereto." *In re Mitchell* 25 B.R. 406, 410 (Bankr.N.D. Ga.1982). This Court is persuaded by the view of the court in *Mitchell* and does not find these sections to be inconsistent. *See also, In the Matter of Lantz*, 7 B.R. 77 (Bankr.S.D.Ohio 1980); *In re Hall*, 752 F.2d 582 (11th Cir.1985).

Third, defendant requests this Court not to recognize the third mortgage on the property as such mortgage shall be paid in the course of the Chapter 11 proceeding associated with the debtor's business. Defendants request is premature and must be denied. This Court will not speculate as to whether the Chapter 11 proceeding will be successfully completed and will not extinguish a secured lien before payment is actually made.

## CONCLUSION

The Court therefore holds that a debtor may employ § 522(f)(1) to avoid a judicial lien on exempt property, in the proper amount which the debtor may claim as exempt regardless of the amount of equity the debtor has in the property. It is, therefore,

ORDERED that the judgment lien of George Kalman is voided in its entirety and the debt is deemed an unsecured debt.