146 B.R. 52 (1992)
In re Lyman and Karen DELIGUORI, Debtors.
Lyman and Karen DELIGUORI, Movants,
v.
GRANITE BANK, Respondent.
In re Kevin HOGAN, Debtor.
Kevin HOGAN, Movant,
v.
FARMINGTON NATIONAL BANK, et al., Respondent.
Bankruptcy Nos. 91-13256, 92-10123, CM Nos. 92-280, 92-770.
United States Bankruptcy Court, D. New Hampshire.
September 11, 1992.
Leonard G. Deming II, Nashua, N.H., for debtors.
J. Roderick Falby Jr., Brighton, Fernald, Taft and Hampsey, Peterbourough, N.H., for creditor Peterborough Savings.
Erica U. Bodwell, Law Office of George Dickson, Milford, N.H., creditor Granite Bank.
Wendell Livingston, Becket & Watkins, Malvern, Pa., creditor American Express T.
Victor Dahar, Manchester, N.H., trustee.

MEMORANDUM OPINION
JAMES E. YACOS, Bankruptcy Judge.
These two contested matters have been consolidated for decision because they present the identical issue of law. Debtors' have moved pursuant to 11 U.S.C. § 522(f)(1) to avoid judicial liens that allegedly impair their right to realize the homestead exemption provided for by New Hampshire state law. The responding banks deny their judicial liens impair debtors' homestead exemptions on the basis that the debtors have no equity, in the economic sense of that word, in their residences. The issue the Court must decide is whether a judicial lien impairs a debtor's right to claim a homestead exemption when it is undisputed that the debtor has no economic equity in the residence.
For the reasons developed in this opinion, the Court rules as a matter of law that a judicial lien does not impair a homestead exemption a debtor would have been entitled *53 when the debtor has no present equity interest in the residence. The following constitutes the Court's findings of fact and rulings of law.[1]

I. FACTS
A. DELIGUORI V. GRANITE BANK
On September 9, 1991, the New Hampshire Superior Court, Hillsborough County, granted Granite Bank (hereinafter "bank" or "banks") a pre-judgment attachment of $30,000 on the debtors' primary residence at the initiation of a state court suit. Thereafter, on November 1, 1991, the movant and his wife filed a joint chapter 7 petition.[2] The debtors' bankruptcy schedule A "Real Property," lists the debtors' home in Bennington, N.H., and states the debtors' interest as $60,000. Schedule A also lists the total debt on the property as $64,599.89. On Schedule C, "Property Claimed As Exempt," the debtors used the same amounts as to their interest in the property and debt outstanding and claimed a $10,000 homestead exemption pursuant to N.H.Rev.Stat.Ann. 480:1  4.[3] Schedule D, "Creditors Holding Secured Claims," lists a first mortgage on their primary residence in favor of Peterborough Savings in the total amount of $64,599.89, of which $60,000 is a secured claim and $4,599.89 is an unsecured claim.[4] Schedule D also lists the bank's attachment as a secured claim of $30,000, although it is also listed as disputed and contingent.
On January 20, 1992, the debtors executed a reaffirmation agreement with the first mortgagee, Peterborough Savings Bank, in the amount of $64,397.92.
Then, on February 10, 1992, the debtors filed the motion to avoid lien. The motion states that Peterborough Savings Bank has a valid first mortgage in the amount of $64,397.92. The motion further states the the debtors' homestead has a fair market value of $59,400. It is thus undisputed that the debtors have no present equity interest, in the economic sense of the word equity, in their residence.
B. HOGAN V. FARMINGTON NATIONAL BANK
On January 14, 1992, the Hogan debtor filed a voluntary chapter 7 petition. The debtor's bankruptcy schedule A "Real Property," lists the debtor's home in Farmington, New Hampshire and states the market value of debtor's interest in his residence as $49,000. On schedule C, "Property Claimed as Exempt," the debtor lists his residence in Farmington, New Hampshire, and both lists the current value of the property without deducting the exemption as $49,000 and states the value of the claimed exemption as $49,000. On schedule D, "Creditors Holding Secured Claims," the debtor lists mortgages and liens on his home in Farmington, Connecticut in the total amount of $96,500 of which $46,500 are claimed as unsecured.
While never stated, it is clear from the debtor's multitudinous motions that when all the mortgages and liens are added together, he has no present economic equity in his home. The consensual mortgages alone add up to $76,500. The consensual and nonconsensual liens on his home are as follows: *54 

 Lien Amount Date
a) Mortgage from Kevin & Nancy Hogan to Rochester
 Savings Bank & Trust Co. $35,500.00 7/27/79
b) State of New Hampshire tax lien $840.15 5/6/88
c) Federal tax lien $7,439.15 9/1/88
d) State of New Hampshire tax lien $589.00 10/19/88
e) Judicial lien in favor of Peerless Insurance Company $18,781.00 5/17/89
f) Judicial lien in favor of Linda Collins $10,000.00 2/26/90
g) Judicial lien in favor of Robert Jacobs $5,000.00 3/23/90
h) Judicial lien in favor of Farmington National
 Bank $10,000.00 4/5/90
i) Mortgage from Kevin & Nancy Hogan to Rochester
 Truck Repair $4,000.00 4/11/90
j) Mortgage from Kevin & Nancy Hogan to Richard
 & Paula Hogan $15,000.00 5/11/90
k) Mortgage from Kevin & Nancy Hogan to Kerry
 Hogan $10,000.00 5/11/90
l) Mortgage from Kevin & Nancy Hogan to Marcel
 & Giselle Nadeau $12,000.00 5/11/90
m) Judicial lien in favor of Peerless Insurance Company $18,620.73 6/17/91

On April 15, 1992 debtor filed six different motions seeking to avoid liens e, f, g, h, i, k and m, supra, pursuant to § 522(f)(1). Liens i and k are consensual mortgages and therefore debtor's motion to avoid them pursuant to section 522(f)(1) is groundless as a matter of law. The Court only considers the motions to avoid liens e, f, g, h, and m to be based in law and possibly subject to lien avoidance.

II. ARGUMENT OF THE PARTIES
A. DELIGUORI
Notwithstanding their lack of economic equity, the debtors maintain that respondent Granite Bank's attachment impairs their homestead exemption. In opposition, the bank argues that the attachment does not impair the debtors' homestead exemption because it is not one of three enumerated exceptions to the homestead exemption statute whereby levying or sale on execution or liability for the payment of debts is permitted.[5]
Notwithstanding the undisputed fact that these debtors lack any economic equity in their homes, they nevertheless maintain that they do have an interest in their homes and that interest is being impaired by the bank's judicial liens which they can avoid pursuant to Code section 522(f)(1). While they make this bald assertion, they never identify what in fact that interest is at this point.[6] The debtors' have also vigorously argued on public policy grounds that the judicial liens impair their ability to realize the Code's "fresh start."
In opposition the Bank argues that since it is undisputed that the debtors have no economic equity in their homestead, then there is no homestead exemption that applies in this case and therefore their lien cannot be avoided. Alternatively, the Bank argues that even if the Court were to hold that 11 U.S.C. § 522(f)(1) does apply to the *55 present fact, the lien nevertheless cannot be discharged because under N.H.R.S.A. 480:4 the homestead is exempt from attachment. Stated slightly differently, it is the Bank's position that since their attachment is already behind the homestead exemption provided under N.H.R.S.A. 480:1 their attachment does not impair the homestead exemption because that exemption is in fact by law before any judicial lien of which the attachment is but of one kind.
Finally, and although not relevant for purposes of the pure issue of law that this Court must decide, the Bank has argued, in response to the debtors' argument that failure to avoid the Bank's attachment will deny the debtors their fresh start as is envisioned and underlines the Bankruptcy Code, that the debtors are in fact not entitled to a fresh start since the attachment is premised on a dischargeability complaint brought by the Bank which alleges that the husband, debtor with knowledge of the impending bankruptcy, continued to take credit card orders for merchandise that he had no intention or ability to provide.
B. HOGAN
The bank in the Hogan case has essentially made the same legal argument as the bank in DeLiguori. The bank in Hogan relies on the Supreme Court case of Owen v. Owen.[7] The bank argues that Owen establishes that a lien may be avoided only where there is an interest that passes to the debtor's estate. The bank believes no interest passed to the estate because the debtor has encumbered his homes with consensual liens in excess of its market value. The bank analyzes the Owen decision as requiring a debtor to have equity in his residence that he would be entitled to claim as exempt but for the judicial lien in question.
The bank in Hogan also identifies what it believes is an issue not raised by DeLiguori. Here, the bank argues that unlike DeLiguori, the debtor in Hogan voluntarily issued several mortgages after the bank perfected its judicial lien against the debtor's residence. The bank argues that to now permit the debtor to avoid the bank's lien would allow a "circuity" of lien priority that was never intended by the enactment of Code § 522(f). It is the bank's contention that if the debtor is allowed to avoid its judicial lien while subordinate consensual mortgages are left in place, it would confer an unfair advantage or priority to these junior consensual lienholders who presumably took their lien with record notice of the senior judicial liens. According to the bank, "[t]he debtor's consent to the unavoidable junior mortgages in effect ratifie[d] the prior judicial liens and insulates them from avoidance."
Creditor Robert Jacobs filed an objection stating his judgment lien cannot be avoided because the debtor has no equity, and to the extent that the debtor has encumbered his property with consensual mortgages in excess of the present value of the property, the debtor may not avoid judicial liens.
Lastly, mortgagee Kerry Hogan has also objected to debtor's motion to avoid her mortgage. She states that the debtor waived his homestead rights when he granted the mortgage to her. This allegation is irrelevant as a matter of law and it will not insulate her from avoidance were her interest in debtor's homestead a judicial lien. But it is not, it is a consensual mortgage. Creditor Kerry Hogan also states that the debtor's motion must be denied because the debtor has not established the property's value and therefore has not proved that it is her mortgage that impairs any equity that the debtor may hold in the property.

III. APPLICABLE LAW
A "judicial lien" is:
one of three kinds of liens defined by the Code. It is a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. It is nonconsensual, as is a statutory lien and is readily distinguishable from the third kind of defined Code lien, the security interest, which is consensual.
*56 5 Collier on Bankruptcy 1300.12 (15th ed. 1991).
N.H.Rev.Stat.Ann. 480:4 provides:
The homestead right is exempt from attachment during its continuance from levy or sale on execution, and from liability to be encumbered or taken for the payment of debts, except in the following cases:
I. In the collection of taxes;
II. In the enforcement of liens of mechanics and others for debts created in the construction, repair or improvement of the homestead;
III. In the enforcement of mortgages which are made a charge thereon according to law;
IV. In the levy of executions as provided in this chapter.
11 U.S.C. § 522, "Exemptions," provides:
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of alien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is 
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any 
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

IV. DISCUSSION
A. EQUITY OR EQUITABLE INTEREST?
1. CIRCUIT COURT CASES
Resolution of the pure issue of law raised by these two matters depends on statutory interpretation involving both the Bankruptcy Code and the New Hampshire homestead exemption. To date, three circuit courts have reached the same issue: two circuit courts require economic equity and one does not. Simonson v. First Bank of Greater Pittston, 758 F.2d 103 (3d Cir.1985); Fitzgerald v. Davis, 729 F.2d 306 (4th Cir.1984); contra In re Brown, 734 F.2d 119 (2d Cir.1984).[8]
In In re Simonson, 758 F.2d 103 (3d Cir.1985), joint chapter 7 debtors moved pursuant to § 522(f)(1) to avoid judgment liens on their residence claiming the liens impaired their federal bankruptcy exemption under § 522(b) of the Code. Like the present case, in Simonson it was undisputed that there was no economic equity in the debtor's home. The Bankruptcy Court denied the motion and the Third Circuit affirmed.
The judgment liens in Simonson were in the second and third positions and the debtor argued that through the combination of § 522(f)(1) and 522(i)(2) those liens could be avoided and the debtor could, in essence, "jump into" the second and third priority positions relative to a subsequently recorded valid second mortgage. See also In re Gancarz, 108 B.R. at 394.
The Third Circuit addressed the issue of what interest a debtor without economic equity in his residence has that may be used to avoid the fixing of a judicial lien. Noting that while section 522(f) does not define what the interest of the debtor in property is for purposes of lien avoidance, the Third Circuit answered the open question thus: "[it is] intended to mean an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under § 522(f)." 758 F.2d at 105.
The Third Circuit also scanned the legislative history but found nothing indicating that Congress intended the anomalous result *57 urged by the Simonson debtor. The Third Circuit wrote: "We have found no indication in the legislative history of § 522 suggesting that Congress intended it to be a means of creating equity, which did not otherwise exist, in property for the benefit of a debtor. Absent such equity, the problem of lien avoidance under § 522(f) simply does not arise." 758 F.2d at 106.
The Third Circuit concluded that as the Simonson debtor had no economic equity, there was no interest in the property to which a claimed exemption could attach. Id.
In a different twist, it was the debtors in Fitzgerald v. Davis, 729 F.2d 306 (4th Cir. 1984), who argued that a judgment lien should be avoided precisely because they had no economic equity in their home after unavoidable mortgages were taken into account. On appeal, the judgment lien creditors argued for subordination rather than the partial avoidance in an amount equal to the state homestead exemption that the bankruptcy court had ordered.
The Fourth Circuit vacated and remanded to the bankruptcy court because of an intervening sale of the property "for a sum in considerable excess" of the estimated value used for purposes of the motion to avoid. Id. at 308. But in remanding the case for reconsideration in light of the market-established value of the home, the Fourth Circuit strongly indicated that for purposes of a motion to avoid a judicial lien under section 522(f)(1), equity was a prerequisite:
"The fair market value of the property is an important factor in determining how to treat a judgment lien under § 522(f), because the extent to which the lien impairs a valid exemption depends on the amount of the debtor's equity in his property. The debtor's equity is the value of the property less any unavoidable mortgages on the property."
Id. at 308.
Unlike Simonson and Davis, the Second Circuit's decision in In re Brown, 734 F.2d 119 (2d Cir.1984), held that a debtor need not establish economic equity in her residence in order to successfully avoid a judicial lien.
The facts of Brown involved a debtor who invoked § 522(f)(1) to avoid the fixing of a judgment creditor's lien on the proceeds of a pre-bankruptcy foreclosure sale of real estate owned by the debtor. The Brown judgment creditor recorded its judgment as a judgment lien on the debtor's property pre-bankruptcy. Then a mortgagee foreclosed upon debtor's residence. The judgment creditor's lien attached to the proceeds as a matter of law. The bankruptcy court allowed the debtor to use § 522(f)(1) to exempt the proceeds of the pre-bankruptcy foreclosure sale of real estate.
In her schedules, the Brown debtor listed the surplus from the foreclosure sale as exempt property. Notwithstanding that the debtor clearly had no equity in the proceeds of the foreclosure sale, the Second Circuit nonetheless found that she had a sufficient equitable interest within the meaning of § 541(a)(1) to support an exemption.
Relying on the usual broad interpretation of Code section 541, "Property of the Estate," the Second Circuit concluded that the equitable prong of section 541's "all legal or equitable interests of the debtor" phrase had generally not been interpreted as being limited to a debtors equity in property. Id. at 123. The Second Circuit wrote: "Rather, the overwhelming weight of authority holds that even if liens on the property exceed the market value of the property, leaving the debtor with no equity in it. The debtor nonetheless has `equitable interest in the property.'" The Brown court identified the debtor's interest as the contingent equitable right of redemption which, in the words of the Second Circuit, "presumably [would] have . . . entitled [her] to have the surplus funds returned to her." Id. at 124.
2. SUPREME COURT CASES
The Supreme Court recently opined on the issue before this court on its way to deciding a related issue for purposes of § 522(f)(1) judicial lien avoidance. In Owen v. Owen, ___ U.S. ___, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court concluded that § 522(f)(1) of the Code allowed *58 a debtor to avoid a judicial lien notwithstanding a governing state law which excluded property encumbered by the kind of lien in question from exemption. The Court discussed the issue at bar thus:
Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house  if, for example, the house is subject to a purchase-money mortgage for its full value  then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, 11 U.S.C. § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), codified in § 522 . . .
Though not the holding and therefore not determinative of the outcome of the present issue, it is apparent that the Supreme Court fully contemplated that a debtor must have a cognizable economic equity interest in his home before it becomes subject to the homestead exemption.
The issue was also discussed in the companion case of Farrey v. Sanderfoot, ___ U.S. ___, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The sole question presented in Sanderfoot was whether § 522(f)(1) permitted a debtor to avoid the fixing of a lien on a property interest that he obtained through a divorce settlement. Id. 111 S.Ct. at 1828. While Sanderfoot involved an unusual fact pattern where the debtor's interest and the lien thereon arose simultaneously, the Court did discuss the issue of what "an interest of a debtor" means for § 522(f)(1) purposes. The Court reasoned that a debtor must first have an interest to which a lien is subsequently fixed before it can be avoided by the § 522(f)(1) lien avoidance power. Id. at 1828-29.
However, the Sanderfoot decision is not precedential in that it did not focus on the kind or magnitude of interest a debtor must have before a lien can be avoided, but rather discussed the timing element between when a debtor's interest in property arises and when a lien on that interest becomes fixed. Id.
3. DISTRICT OF NEW HAMPSHIRE BANKRUPTCY COURT
This court considered a motion to avoid a judicial lien in the matter of In re Gancarz, 108 B.R. 392 (Bankr.D.N.H.1989). Gancarz involved a chapter 13 debtor's motion to avoid a judicial lien on his home pursuant to § 522(f)(1). During the course of the Gancarz opinion this Court noted that "[t]here is no question defendant has a judicial lien, or that the debtors have equity in their home equal to the amount of the judicial lien they seek to avoid. The only question raised in this adversary proceeding is whether the lien impairs a valid exemption under New Hampshire State Law." Id. at 393. As both parties have correctly observed, the issue of whether or not a debtor must have equity in his home before an exemption interest arises was assumed without being decided. The Court now definitively answers that open question in the affirmative.
4. OTHER CASES
The debtors have advanced their argument by relying principally on the case of In re Berrong, 53 B.R. 640 (Bankr.D.Co. 1985). Berrong's utility for the debtors' is its protean statement that "although the case law is divided, the overwhelming and more recent authority supports the interpretation that while equity is an interest, it is not necessarily the only interest of the debtor." Id. at 643 (citations omitted).
Like the Second Circuit's Brown decision discussed above, the Berrong court reached its result on the basis of the customarily broad interpretation given *59 § 541(a)(1) of the Bankruptcy Code. Section 541(a)(1) states that a debtor's estate consists of all legal or equitable interests of the debtor as of the time of the commencement of the case. In essence, the Berrong decision relied on the interpretation of a different section of the Code to rationalize and arrive at its determination under § 522(f)(1).
Perhaps between the lines of Berrong was that court's concern that judicial lienors will wait for some appreciation in a property's value and then rush to foreclose and collect on their judicial liens. Apparently, and perhaps correctly, Berrong perceived this possibility as an impediment to the debtor's fresh start. Id. at 643.
Nonetheless, this Court is constrained to reject Brown and Berrong. Neither case abides by the plain language of section 522(f)(1). Moreover, their rationale leads to anomalous results that cannot be supported in the absence of citation to legislative history indicating Congress considered and intended such results.[9]
B. "WOULD HAVE BEEN ENTITLED" BUT FOR WHAT?
Complicating the resolution of the present controversy is the phrase in § 522(f) that reads: "The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section,. . . ." (emphasis added). While arguably ambiguous, the only plausible interpretation of this phrase is that the "would have been" refers to the situation that would exist but for the judicial lien itself. Thus, if it is the judicial lien in dispute which impairs a claimed homestead exemption, then the debtor may avoid that judicial lien.
Under the facts of the present case, these debtors would not have been entitled to claim the New Hampshire homestead exemption since it is undisputed that the total liens exceed the present value of the property. As the phrase "would have been entitled" is in the past tense, the debtors can hardly argue that some future increase in the value of their homes, and thus the belief that equity will be created deus ex machina, entitles them to avoid the judicial liens now. That reading simply does not comport with the language of § 522(f).
The Supreme Court has recently construed the very exact phrase and its construction supports this Court's determination. In Owen v. Owen, ___ U.S. ___, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), referred to above, the Supreme Court analyzed the meaning of the phrase "would have been entitled to." The Supreme Court wrote:
If respondent's interpretation of § 522(f) were applied to this exemption, a debtor who owned a house worth $10,000 that was subject to a judicial lien for $9,000 would not be entitled to the full homestead exemption of $7,500. The judicial lien would not be avoidable under § 522(f), since it does not "impair" the exemption, which is limited to the debtor's "aggregate interest" of $1,000. The uniform practice of bankruptcy courts, however, is to the contrary. To determine the application of § 522(f) they ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself.
As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)  which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he "would have been entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" but for what? The answer given, with respect to the federal exemptions, has been but for the lien at issue, and that seems to us correct.
* * * * * *
We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions *60  ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien is correct.

V. THE "FRESH START"
Debtors also argue that denial of their motions to avoid judicial liens will be tantamount to a denial of their fresh start. Unless the Court grants the motion, the debtors claim they will have to sail into the future with an albatross around their necks. In support of this contention, the DeLiguori debtors note that they have reaffirmed their note with the first mortgagee and have remained current on post-petition payments. The Hogan debtor notes he "continue[s] to make mortgage payments to the purchase-money lender."
As the Hogan debtor rightly and correctly observes, this Court takes the Code's primary policy of giving an honest debtor a fresh start very seriously. Along with the Code's equality of distribution policy, a debtor's fresh start is one of the two pillars on which the Code is built.
Nonetheless, the fresh start envisioned by the Code never guarantees a debtor the right to insulate his home, especially where as in these cases, the debtors saw fit to encumber their homes with consensual mortgages in excess of the values. Mr. Hogan, who has vigorously asserted this policy argument, has encumbered his home with consensual mortgages in the amount of $76,500 on a home he valued in his bankruptcy schedules as now being worth approximately $49,000.
The Code's policy of giving every good faith debtor the possibility of reorganizing his or her financial affairs and to start life afresh informs virtually every decision of a bankruptcy court. However, the statutory language of section 522(f)(1) is clear and requires the conclusion that debtors' motions to avoid judicial liens be denied. The Second Circuit's Brown decision looses sight of the plain language of section 522(f)(1) and reaches its result through section 541 property of the estate analysis. Under Brown, every debtor has an equitable interest in his home, i.e., his interest not to lose it. But, as already noted above, using this amorphous kind of equitable interest produces an anomalous result not in accord with the language of section 522(f)(1).
If the Congress desires to expand the benefits of the Code's fresh start for debtors, they of course are free to do it explicitly, absent any constitutional obstacle.

VI. CONCLUSION
The Court holds that a debtor must have economic equity in his home as of the petition date in order to avoid a judicial lien pursuant to 11 U.S.C. § 522(f)(1). Simply stated, there is no "interest" a debtor "would have been otherwise entitled to" when his home is over-encumbered with consensual mortgages in excess of the home's present market value.
NOTES
[1] Fed.R.Bankr.P. 7052.
[2] Although the DeLiguori case is a joint chapter 7 petition, only the husband, Lyman DeLiguori, is named as the movant on the motion to avoid lien. Nonetheless, the movant claims a $10,000 homestead exemption, an amount reflecting the combined homestead exemption available to husband and wife under New Hampshire exemption law in effect at the time of filing of their case. The statute has since been amended to permit a debtor to claim a $30,000 homestead exemption. Despite this superficial inconsistency, the Court will treat the motion as brought by the debtors jointly.
[3] See subheading "III. Applicable Law" at p. 55 infra.
[4] Although the debtors fail to specify in their Schedule D the date the debtors executed the first mortgage in favor of Peterborough Savings, the Court assumes it was prior in time to the recordation of respondent's attachment.
[5] See subheading "III. Applicable Law" at p. 55 infra.
[6] The memorandum in support of the motion to avoid lien in the DeLiguori case argues as follows:

"[T]he interest which the debtors have in their home rises above the mere dollars and cents which the simple investor sees . . . Although the debtor's schedules show marginally less value than the senior mortgage, thus showing no equity, such values are not so binding as to preclude the Court from finding that equity could still exist."
Memorandum of Law in Support of Motion to Avoid Lien at 6.
[7] Discussed at pps. 57-58, 59 infra.
[8] Three other Circuit Courts of Appeals have reached the similar issue of lien avoidance pursuant to 11 U.S.C. § 522(f)(2). The split has been the same with two requiring economic equity and one not. In re Pine, 717 F.2d 281 (6th Cir.1983); In re McManus, 681 F.2d 353 (5th Cir.1982); contra In re Hall, 752 F.2d 582 (11th Cir.1985).
[9] See Simonson, 758 F.2d at 106, discussed at pps. 56-57 supra.