**In re Howard C. SATURLEY and Geraldine F. Saturley, Debtors.**

**Howard C. SATURLEY and Geraldine F. Saturley, Movants,**

v.

**CASCO NORTHERN BANK, N.A., and Coastal Oil of New England, Inc., Respondents.**

**Bankruptcy No. 91–10072.**

United States Bankruptcy Court, D. Maine.

Jan. 8, 1993.

Peter S. Plumb, Murray, Plumb & Murray, Portland, ME, for Coastal Oil of New England, Inc.

Richard P. Olson, Pierce, Atwood, Scribner, et al., Portland, ME, for Casco Northern Bank, N.A.

Kim M. Vandermeulen, Vandermeulen, Goldman & Allen, Augusta, ME, for the Saturleys.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Before the court is the debtors' § 522(f)(1)[1] motion to avoid judicial liens held by Casco Northern Bank, N.A. ("Casco") and Coastal Oil of New England ("Coastal"). For the reasons set forth below, I conclude that neither Howard Saturley nor Geraldine Saturley may make use of § 522(f)(1)'s avoidance powers.[2]

### History

The Saturleys filed their voluntary Chapter 7 bankruptcy petition on January 29, 1991. Among their assets they listed residential real estate in Jonesboro, Maine. All parties agree that the Jonesboro real estate had a market value of $115,000.00 on the bankruptcy filing date.[3] Mr. George Chickering holds a perfected, first mortgage on the Jonesboro property, securing a claim in excess of $115,000.00.[4]

Howard Saturley was the sole owner of the Jonesboro property until January 17, 1991. On that date, twelve days before the bankruptcy filing, he conveyed his interest to himself and Geraldine as joint tenants. Pursuant to Maine's exemption statute, each of the debtors claims a $60,000.00 exemption in the Jonesboro property.[5]

---

1. 11 U.S.C. § 522(f)(1). All statutory cites are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise noted.

2. The facts are not in dispute. This memorandum sets forth conclusions of law rendered in accordance with F.R.Bank.P. 7052 and 9014.

3. No one argues that the property's value as of any date other than the date the petition was filed is pertinent. Although the debtors assigned a higher value to the property in their schedules, they assert that the property is worth $115,000.00 for purposes of this motion. Casco and Coastal have not contested that value. Debtors' Motion to Avoid Liens, Court Doc. No. 2 at ¶ 3; Court Order dated December 19, 1991 (requiring parties to come forward with any challenge to debtors' allegations of value).

4. Debtors' Motion to Avoid Liens, Court Doc. No. 2 at par. 4. Casco and Coastal previously questioned the *bona fides* of the Chickering mortgage. Casco Objection to Proposed Abandonment of Jonesboro Real Estate, Court Doc. No. 90, at ¶ 3; Coastal Objection to Abandonment of Jonesboro Property, Court Doc. No. 91, at ¶ 5. No action to set aside the mortgage has been initiated by any party. Moreover, given the lien creditors' argument that, taking into account the mortgage, the debtors have no interest of economic value in the real estate, they are not challenging the mortgage in these proceedings.

5. Maine has "opted out" of the federal exemption scheme, thereby limiting its residents to state law exemptions in bankruptcy. *See* 11 U.S.C. § 522(b)(1); 14 M.R.S.A. § 4425. The parties agree that, by reason of age, each debtor is entitled to claim a $60,000.00 exemption in residential real property under 14 M.R.S.A. § 4422, which provides:

> The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.
>
> **1. Residence.** The exemption of a debtor's residence is subject to this subsection.
>
> **A.** Except as provided in paragraph B, the debtor's aggregate interest, not to exceed $12,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, ... provided that ... if the debtor's interest is held jointly with any other person or persons, the exemption may not exceed in value the lesser of $12,500 or the product of the debtor's fractional share times $25,000.
>
> **B.** The debtor's aggregate interest, not to exceed $60,000 in value, in property described in paragraph A, if the debtor or a dependent of the debtor is either a person 60 years of age or older or a person physically or mentally disabled ...; provided that if the debtor's interest is held jointly with any other person or persons, the exemption shall not exceed in value the lesser of $60,000 or the product of the fractional share of the debtor's interest times $120,000....
>
> **C.** That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within such period.

Since the date that the Saturleys filed bankruptcy, the statute has been amended in ways unrelated to their exemption claims. Laws 1991, c. 741, § 1, subsec. 1, ¶ A (increasing exemption levels for debtors under 60 years of age).

The Jonesboro real estate, long ago abandoned by the trustee,[6] is encumbered by Casco's $1,630,814.75 lien and by Coastal's $230,000.00 lien, acquired by state court orders for *ex parte,* prejudgment attachment and recorded on November 6 and December 28, 1990, respectively.[7]

## Discussion

In an attempt to sweep title to the Jonesboro property clean of interests junior to the Chickering mortgage, the Saturleys invoke § 522(f), which provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien....

The Saturleys' attempts to employ § 522(f) are unavailing. The reasons differ as to each.

## I. *Geraldine.*

■ The lien creditors contend that, under Maine law, Geraldine Saturley may not rightfully claim an exemption in the Jonesboro realty because she acquired her interest in it through a fraudulent conveyance immediately before filing for bankruptcy relief.[8] Whatever may be said about the vitality of the argument,[9] it is foreclosed by the creditors' failure to object timely to

Geraldine's claim of exemption.[10] Thus, she holds exemption rights in the Jonesboro real estate.

■ To say that Geraldine Saturley may assert a $60,000.00 exemption in the property, however, does not establish that she may utilize § 522(f)(1) to avoid the Casco and Coastal liens. In fact, she may not.

The explanation is straightforward. Both liens fixed upon the property before Geraldine held any interest in it. In *Farrey v. Sanderfoot,* —— U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), the Supreme Court explained:

> [T]he text, history, and purpose of § 522(f)(1) also indicate what the provision is *not* concerned with. It cannot be concerned with the liens that fixed on an interest before the debtor acquired that interest.... Section 522(f)(1) does not state that any fixing of a lien may be voided; instead, it permits avoidance of the "fixing of a lien on an interest of the debtor." If the fixing took place before the debtor acquired that interest, the "fixing" by definition was not on the debtor's interest. Nor could the statute apply given its purpose of preventing a creditor from beating the debtor to the courthouse, since the debtor at no point possessed the interest without the judicial lien. There would be no fixing to avoid since the lien was already there. To permit lien avoidance in these circum-

---

6. Order dated October 8, 1991, Court Doc. No. 101. The trustee proposed to abandon the Jonesboro property because liens and encumbrances on it, including the Chickering mortgage and the judicial liens held by Casco and Coastal, together with the debtors' $120,000.00 exemption, vastly exceeded its value. Casco and Coastal objected. The objections were overruled, however, because they constituted in large part untimely challenges to the Saturleys' exemption claims. *See Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

7. Attachment liens are "judicial liens." 11 U.S.C. § 101(36). *See* 14 M.R.S.A. § 4101, *et seq.;* Me.R.Civ.P. 4A.

8. *See* 14 M.R.S.A. § 4422, *supra* at n. 5 ("property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.")

9. 14 M.R.S.A. § 4422 prevents a debtor from exempting property to the extent that it was fraudulently conveyed *"by* the debtor" (emphasis added). The statute contains no exception for property fraudulently transferred *to* the debtor. Moreover, Maine's exemption laws contemplate some "exemption planning." *See* 14 M.R.S.A. § 4423 (eliminating exemption rights in property acquired as a result of a transfer of nonexempt property within 90 days of bankruptcy to the extent that the improvement or increase in value of exempt property exceeds the "reasonable needs" of the debtor or his dependents).

The effect of these state law provisions on Geraldine Saturley's rights and their compatibility with federal bankruptcy law governing exemptions and exemption planning are not at issue here.

10. *See supra* note 6.

stances, in fact, would be to allow judicial lien holders to be defrauded through the conveyance of an encumbered interest to a prospective debtor. See *In re McCormick*, 18 B.R. 911, 913–14 (Bkrtcy. Ct. WD Pa.1982). For these reasons, it is settled that a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached. See, *e.g.*, *In re McCormick, supra; In re Stephens*, 15 B.R. 485 (Bkrtcy.Ct. WD NC 1981); *In re Scott*, 12 B.R. 613 (Bkrtcy.Ct. WD Okla.1981).

—— U.S. at ——, 111 S.Ct. at 1830 (emphasis in original).

Geraldine Saturley acquired her interest in the Jonesboro property *subject to* the judicial liens in question. Therefore, the liens did not "fix" on her interest. Thus, her attempt to avoid those liens via § 522(f)(1) must be denied.

## II. *Howard.*[11]

■ When Casco and Coastal obtained attachment orders from the state court and recorded them in accordance with Maine law, their liens fixed upon Howard Saturley's then-existing interest in the Jonesboro real estate.[12] As a result, unlike Geraldine, he may invoke § 522(f)(1) to avoid the judicial liens on the real estate if other conditions on its use are satisfied. But the

question remains whether a debtor who concedes that the total amount of unavoidable encumbrances on property exceeds its value may employ § 522(f)(1) to avoid judicial liens.[13]

The Supreme Court has not answered the question whether the value of a debtor's interest in property claimed as exempt must be greater than zero in order to avoid judicial liens. *Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 1837 n. 4, 114 L.Ed.2d 350 (1991). Circuit level authority is split. *Compare In re Simonson*, 758 F.2d 103, 106 (3d Cir.1985) (interest of economic value required); and *Fitzgerald v. Davis*, 729 F.2d 306, 308 (4th Cir.1984) (same, dictum); *with In re Brown*, 734 F.2d 119, 125 (2d Cir.1983) ("debtor is permitted, even if he lacks an equity interest in the property, to avoid the fixing of a judicial lien on the property...."). Noting that the law is unsettled, the Bankruptcy Court for the District of New Hampshire recently analyzed the Code and pertinent case law and determined that some economic value in the debtor's interest in property that is the subject of an exemption claim is a prerequisite to § 522(f)(1) lien avoidance. *DeLiguori v. Granite Bank (In re Deligouri)*, 146 B.R. 52, 57–59 (Bankr.D.N.H.1992).[14]

I agree with *DeLiguori's* reasoning and hold that, in order to avoid judicial liens on

---

**11.** For the same reasons as discussed with regard to Geraldine's claim of exemption, Howard's right to assert exemption rights in the Jonesboro property is beyond dispute. *See supra* note 6.

**12.** An attachment of real estate, when properly recorded, creates a lien against the property under state law. *In re Mills*, 32 B.R. 507, 508 (Bankr.D.Me.1983). *See* 14 M.R.S.A. §§ 4154, 4454. *See Farrey v. Sanderfoot*, —— U.S. at ——, 111 S.Ct. at 1829 (to "fix" means to "fasten a liability upon"), citing *Black's Law Dictionary* 637 (6th ed. 1990).

**13.** The Court of Appeals for the First Circuit has yet to address the issue. Two cases from this circuit's Bankruptcy Appellate Panel address § 522(f) issues unrelated to those before this court today. *See In re White*, 25 B.R. 339 (Bankr. 1st Cir.1982) (lien avoidance provisions not retroactive); and *In re Parenteau*, 23 B.R. 289 (Bankr. 1st Cir.1982) (determination of amounts of mortgage liens in lien avoidance proceeding). In *In re Brawn*, 138 B.R. 327

(Bankr.D.Me.1992), this court considered a § 522(f) lien avoidance motion. There it was undisputed that the debtor's interest in his residence had economic value.

**14.** Some authorities that require "equity" as a prerequisite to use of § 522(f)'s avoidance powers may be criticized for considering all encumbrances on a property. *See, e.g., In re Pine*, 717 F.2d 281 (6th Cir.1983) (§ 522(f)(1)), *cert. denied sub nom. Pine v. Credithrift of America, Inc.*, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 183 (1984); *In re McManus*, 681 F.2d 353 (5th Cir. 1982) (§ 522(f)(1). These cases give undue effect to state exemption statutes that confine a debtor's exemption to his or her "interest" or "aggregate interest" in the property. Thus, they exclude property within exemption categories from the debtor's exemption rights to the extent of any and all encumbrances. As discussed below, the proper approach is to consider only encumbrances which are not avoidable under the Bankruptcy Code or other applicable law. *Owen v. Owen*, —— U.S. at ——, 111 S.Ct. at 1837–38.

residential real estate under § 522(f)(1), a Maine debtor must hold an interest of cognizable economic value in the property that is the subject of his exemption claim. To hold otherwise invites "anomalous," legislatively-unintended results when, for example, judicial liens are "sandwiched" by unavoidable mortgages. *In re DeLiguori*, 146 B.R. at 59, citing *In re Simonson*, 758 F.2d at 106. *Cf. Kenpak Converters, Inc. v. Patterson (In re Patterson)*, 139 B.R. 229 (Bankr.9th Cir.1992) (resolving circular priorities). This conclusion is consistent with traditional notions of debtors' exemption rights, gives correct content to Maine's exemption statutes and serves properly to protect those interests that Congress sought to safeguard when it enacted § 522(f).

*Interests, Value and the Estate.* Whether a debtor's interest in property has or hasn't economic value, that interest passes to the estate upon the commencement of a bankruptcy case. 11 U.S.C. § 541(a).

> An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.

*Owen v. Owen,* — U.S. at —, 111 S.Ct. at 1835.

Certainly, a debtor's "interest" in residential property encompasses rights beyond the dollar value of the debtor's economic interest. *See, e.g., In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP1990); *In re Cormier*, 147 B.R. 285 (Bankr.D.Me.1992) (right to cure default after foreclosure judgment); *In re DeLiguori*, 146 B.R. at 58; *In re Kruger*, 77 B.R. 785, 787 (C.D.Cal.1987). However, whether a valueless interest may support an exemption depends on the parameters set by state or federal exemption law. *Owen v. Owen,* — U.S. at —, 111 S.Ct. at 1835. If applicable law provides, the debtor may exempt an interest in property which has no economic value at the time of the bankruptcy. For instance, in *Owen*, the Supreme Court noted that bare legal title to an over-encumbered house might support an exemption. *Owen v. Owen,* — U.S. at —, 111 S.Ct. at 1835–36.

*Exemption and Value.* Maine's residence exemption, like those of most other states, protects from creditors a legislatively-determined portion of the dollar value of a debtor's interest in his or her residential property. 14 M.R.S.A. § 4422(1)(A) & (B) ("debtor's aggregate interest, not to exceed ...."). Plainly, Maine's exemption statute protects only a debtor's economic interest in the residence, and only up to the statutory ceiling. *See* 14 M.R.S.A. § 4422(C) (exempting proceeds for six months for purposes of "reinvesting in a residence") and 14 M.R.S.A. § 4424 (providing for sale of property if "the debtor's interest in any property exempt under section 4422 exceeds the exempt amount").[15]

*Value of Rights in Exempt Property Under § 522(f).* In connection with § 522(f) proceedings, the value of a debtor's interest in property claimed as exempt

---

**15.** Under Maine's exemption scheme, a debtor's interests in certain categories of property are exempt from attachment and execution without reference to value. *See, e.g.,* 14 M.R.S.A. § 4422(6) (furnaces, stoves and fuel); (8) (farm equipment); (10) (unmatured life insurance contract); and (12) (prescribed health aids). The statute restricts the extent of some exemptions in ways unrelated to the value of the debtor's interest in the property. *See, e.g.,* 14 M.R.S.A. § 4422(6) (exempting furnaces, cooking stoves, and heating stoves "held primarily for the personal family or household use of the debtor or a dependent of the debtor"); and (8) (farm equipment "reasonably necessary for the debtor to raise and harvest agricultural products commercially"). There are also restrictions marginally related to value. *See, e.g.,* 14 M.R.S.A. § 4422(9) (fishing boat "not exceeding 5 tons burden, used primarily for commercial fishing"); (7)(A) (food provisions "reasonably necessary for 6 months"); (7)(B) (seeds, fertilizers and feeds "reasonably necessary to raise and harvest food through one growing season"); and (7)(C) (tools and equipment "reasonably necessary for raising and harvesting food").

is to be "measured by taking into account those interests of other parties which may not be avoided under § 522(f)." *In re Simonson,* 758 F.2d at 105. *See Owen v. Owen,* — U.S. at —, 111 S.Ct. at 1835–36 (critical inquiry in applying § 522(f) to both federal and state exemptions is what exemption the debtor would have been entitled to *"but for the lien at issue...."*) (emphasis in original). *See also Fitzgerald v. Davis,* 729 F.2d at 308; *In re Galvan,* 110 B.R. at 450.

*Starting Fresh: § 522(f)'s Objective.* Section 522(b)'s "opt out" clause permits states that choose to do so to define the scope of exemptions available to their debtors in bankruptcy. *Owen v. Owen,* — U.S. at —, 111 S.Ct. at 1835. In enacting § 522's exemption and lien avoidance provisions, Congress sought to protect the ability of a debtor to emerge from bankruptcy with sufficient property to enjoy a "fresh start." [16] "Lien avoidance" and "exemption impairment" are concepts Congress fashioned presuming availability of the federal exemptions set forth in § 522(d), including § 522(d)(1)'s residence exemption.[17] That provision, like Maine's residence exemption, is defined in terms of the dollar value of the debtor's interest in property.[18]

Some courts and commentators conclude that because judicial liens impair rights important to a debtor's fresh start, lien avoidance under § 522(f)(1) is appropriate, even when the debtor holds an interest of no economic value in the homestead.[19] I cannot agree. Without question, interests that are significant to a fresh start are implicated when residential property remains encumbered by judicial liens. However, those rights are not protected by Maine's exemption law.

In some cases a debtor may retain possession of residential property following a Chapter 7 bankruptcy. That result follows from a combination of factors including the market, the extent of unavoidable encumbrances, the character and level of available exemption rights, the debtor's ability to reaffirm indebtedness and the transaction costs of forced sales. But, if a Chapter 7 debtor does retain his or her home, it is the *consequence* of those circumstances. It is not the *purpose* of the exemption.

Because Howard Saturley's interest in the Jonesboro real estate has no value, the existence of the Casco and Coastal judicial liens impair no exemption rights to which he would otherwise be entitled. His motion to avoid those liens must be denied.

**16.** *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., 126 (1977), U.S.Code Cong. & Admin.News, 5787, 5963, 6087. *See generally* Vukowich, *Debtors' Exemption Rights Under the Bankruptcy Reform Act,* 58 N.C.L.Rev. 769 (1980).

**17.** A review of the evolution of the exemption provisions of the Reform Act reveals that the formulation of the substantive federal exemptions, as well as features of the Act designed to implement and to safeguard those exemptions proceeded on the assumption that a uniform federal exemption would become law, either as the exclusive bankruptcy exemption or as an ever-available alternative to state law exemptions.
Haines, *Section 522's Opt–Out Clause: Debtor's Exemptions in a Sorry State,* 1983 Ariz.St.L.J. 1, 6.

**18.** Section 522(d)(1) provides an exemption in:
The debtor's aggregate interest, not to exceed $7,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the

debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
The federal exemption scheme is similar to Maine's in other respects. Section 522(d) provides exemptions for some categories of property without regard to the value of the debtor's interest in them, *e.g.,* prescribed health aids, social security benefits, unemployment compensation, and veterans' benefits. *See* 11 U.S.C. §§ 522(d)(9) and 522(d)(10).

**19.** Several courts have held that a debtor has an "interest" in the property within the meaning of section 522(f), even if there is no equity in the property, and have held that a judicial lien could impair an exemption in that situation. To hold otherwise would permit the judicial lienor to wait for the equity to rise above the exemption, after bankruptcy, and would frustrate and thwart bankruptcy policy of providing the debtor with a fresh start.
Bowmar, *Avoidance of Judicial Liens That Impair Exemptions in Bankruptcy: The Workings of 11 U.S.C. § 522(f)(1),* 63 Am.Bankr.L.J. 375, 389 (collecting cases) (footnotes omitted) (hereinafter "Bowmar").

*Conclusion*

The liens cannot be avoided under § 522(f). They remain in place against the Jonesboro property.[20] Because the property is not being liquidated, the liens do not disappear for lack of value to support them. *See Dewsnup v. Timm,* — U.S. at ——, 112 S.Ct. at 778. But the debtor's exemption rights under Maine law do not disappear, either. Today's holding does not affect the Saturleys' rights to claim their Maine law exemptions if the property remains their residence when it is liquidated.[21] The day of reckoning will come, if at all, later.

A separate order denying the debtors' § 522(f)(1) motion shall issue forthwith.

---

**20.** In light of today's holding, it is unnecessary to address issues relating to the nature of the remedy provided by § 522(f) and the significance of *Dewsnup v. Timm,* — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) on previously held notions of that remedy. *Compare, e.g., In re Opperman,* 943 F.2d 441, 444 (4th Cir.1991) (avoiding lien only to extent it actually interferes with the debtor's homestead exemption); *In re D'Amelio,* 142 B.R. 8, 10 (Bankr.D.Mass. 1992) (avoidance under § 522(f) does not require that liens be declared void, issue is really one of setting relative priorities); *In re Prestegaard,* 139 B.R. 117, 119–20 (Bankr.S.D.N.Y. 1992) (avoidance to carve out value for exemption only); *In re Cerniglia,* 137 B.R. 722, 725 (Bankr.S.D.Ill.1992) (ability to avoid lien is limited to extent it impairs exemption); *with In re Herman,* 120 B.R. 127, 132 (9th Cir. BAP 1990) (voiding lien to the extent it is not supported by available value taking into account non-avoidable encumbrances and exemption rights); *In re Galvan,* 110 B.R. at 450 (unsecured portion of lien voided as a "charge" on debtor's property impairing "fresh start"); *In re Magosin,* 75 B.R. 545, 546 (Bankr.E.D.Pa.1987) (judicial lien rendered void); *In re Princiotta,* 49 B.R. 447, 450 (Bankr.D.Mass.1985) (voiding judicial lien). *See also Farrey v. Sanderfoot,* — U.S. at ——, 111 S.Ct. at 1829 ("avoid" means "annul" or "undo"). *Cf. In re Hyman,* 967 F.2d 1316, 1321 (9th Cir.1992) (permitting trustee to attempt to sell homestead and commenting that debtors' exemption rights are limited to dollar amount provided by California statute). *See generally* Bowmar, *supra* note 20.

The sole reported case on § 522(f) from this jurisdiction held that the debtor was entitled to avoid the lien in question and ordered "the judicial lien on [the debtor's] exempt residential real estate is avoided." *In re Brawn,* 138 B.R. at 334. In that case the character of the § 522(f)(1) remedy was not disputed.

**21.** *See In re Roberts,* 22 B.R. 215 (Bankr.D.Me. 1982) (noting fluid character of exemption rights); *Curtis v. Commissioner of Human Services,* 507 A.2d 566, 570 (Me.1986) (exemption rights subject to change as a function of, among other things, value of property). *Cf. In re Hyman,* 967 F.2d at 1321 (discussing fluctuations in value and exemption rights in bankruptcy and execution sale contexts).