**In re Rex A. IVIE, and LaVerne M. Ivie, Debtors.**

**Rex A. IVIE, and LaVerne M. Ivie, Plaintiffs,**

v.

**Glenn A. FREY, and Patricia Frey, Defendants.**

**Bankruptcy No. 93–11215–7.**

**Adv. No. 93/00093.**

United States Bankruptcy Court, D. Montana.

April 1, 1994.

Craig D. Martinson, Billings, MT, for debtors/plaintiffs Rex A. and LaVerne M. Ivie.

James A. Patten, West, Patten, Bekkedahl & Green, Billings, MT, for creditors Glenn A. and Patricia Frey.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case and adversary proceeding, the Plaintiffs/Debtors filed a motion and complaint to avoid the judicial lien of the defendants Frey pursuant to 11 U.S.C. § 522(f), or in the alternative to value the extent of such lien. The Debtors have also filed an objection to the Proof of Claim of

Freys. All matters have been submitted on an agreed statement of facts. Briefs have been filed by the respective counsel and the matter is ready for decision.

The agreed facts as supplemented are as follows:[1]

1. That a certified appraiser, David J. Thor, Northland Securities, made an appraisal of certain property of the Debtors, date May 1, 1993. This appraisal is stipulated as representing true and correct values on property owned by Debtors.

2. The appraisal, Exhibit A, determined that the various land uses had the following fair market values per acre:

| | |
|---|---|
| CRP acreage | $210.00 |
| Grassland | 72.00 |
| Non-use land | 49.00 |
| Farmstead | 210.00 |

3. The appraised land was valued in two (2) separate parcels, which are described as follows:

Parcel # 1 of Appraisal:
Musselshell County, Montana, Township 5N, Range 24 E,

Section 32: SW¼

Yellowstone County, Montana, Township 4 N, Range 24 E,

Section 4: Lots 3 & 4, S½NW¼, SW¼ (app. W½)
Section 5: SE¼
Section 8: NE¼
Section 9: W½
Section 32: NW¼

Parcel # 2 of Appraisal:
Yellowstone County, Montana, Township 4N, Range 24 E,

Section 22: S½NE¼
Section 32: E½, SE¼

4. The appraised value of Parcel # 1 is $238,500. A homestead declaration filed by Rex A. Ivie and LaVerne M. Ivie described all of Parcel # 1, except the SW¼ of Section 32, T5N, R24E and the NW¼ of

1. The Court has made certain editorial changes for purposes of clarity, but which make no mate-

Section 32, T4N, R24E. In arriving at the appraised value, cost values were used as follows:

| Type/Land | Acreage | Value | Total |
|---|---|---|---|
| CRP | 954.3 | $210 | $200,403.00 |
| (actually is 972.2 acres) | | | |
| Grassland | 205.8 | 72 | 14,818.00 |
| Non-use land | 110.05 | 49 | 5,392.45 |
| (actually is 92.15) | | | |
| Farmstead | 5.0 | 210 | 1,050.00 |
| Buildings | | | 19,000.00 |
| | | | $240,663.45 |

This was then rounded off to $240,700.00. While the appraisal showed 954.3 acres in CRP, this real estate actually included a total of 972.2 acres of CRP, or a total of 17.9 acres more than included in the appraisal, as shown by the following CRP contracts:

| | |
|---|---|
| CRP contract # 34 | 275.6 acres |
| (W½ Section 9) | |
| CRP contract # 35 | 696.6 acres |
| | 972.2 acres |

As such, the appraisal for Parcel # 1 needs to be increased by $210 × 17.9 acres, or $3,759.00, less non-use land of 17.9 acres at $49.00 per acre, or $877.10. Thus, the agreed value of Parcel # 1 is $243,581.90.

5. The breakout of the land classification and values for Parcel # 1 is as follows:

Township 5N, Range 24E,

Section 32: SW¼

| | | |
|---|---|---|
| CRP (Contract # 35) | 159.3 × 210 = | $33,453.00 |
| Grassland | 0 | 0 |
| Non-use | .7 × 49 = | 34.30 |
| | | $33,487.30 |

Township 4N, Range 24E,

Section 4: Lots 3, 4, S½NW¼, SW¼ (W½)

| | | |
|---|---|---|
| CRP (Contract # 35) | 137.2 × 210 = | $28,812.00 |
| CRP (Contract # 35) | 109.2 × 210 = | 22,932.00 |
| Grass | 45.8 × 72 = | 3,297.60 |
| Non-use | 18.6 × 48 = | 911.40 |
| Farmstead | 5.0 × 210 = | 1,050.00 |
| | | $57,003.00 |

In addition, this tract contains a homestead valued at $19,000.

rial change.

Section 5: SE¼

CRP (Contract #35) 158.1 × 210 = $33,201.00
Grass 0
Non-use 1.9 × 49 = 98.10
$33,294.10

Section 8: NE¼

CRP (Contract #35) 133.1 × 210 = $27,950.00
Grass 0
Non-use 26.0 × 49 = 1,318.10
$29,268.10

Section 9: W½

CRP (Contract #34) 275.6 × 210 = $57,876.00
Grass 0.
Non-use 44.5 2,180.50
$60,056.50

Section 32: NW¼

CRP 0
Grass 160.0 × 72 = $11,520.00
Non-use 0

6. Prior to the filing of this Chapter 7 bankruptcy on August 25, 1993, the creditors, Freys, obtained a judgment against the Ivies which, as of August 25, 1993, had a balance due thereon of principal of $120,118.53 and accrued interest of $11,651.46, with interest accruing thereafter at nine percent (9%) per annum.

7. The judgment of Glenn Frey and Patricia Frey against Rex A. Ivie and LaVerne M. Ivie was entered in the District Court for the Thirteenth Judicial District in and for Yellowstone County on November 12, 1991. Exhibit B. On or about June 2, 1992, Glenn Frey and Patricia Frey filed a transcript of the judgment, which was duly docketed in the District Court of the 14th Judicial District of the State of Montana in and for the county of Musselshell. Exhibit C. However, the docketed judgment describes the judgment creditor as Ivie, the Debtors, and the Judgment Debtors, as Frey. No other documents have been filed by Glenn Frey and Patricia Frey in Musselshell County, Montana, concerning this judgment.

8. Subsequent to this bankruptcy being filed, the creditors, Freys, had executed upon said judgment, having a Sheriff's sale of that real estate described as Parcel # 2 in the appraisal, plus the Debtors' leasehold interest in the S½ of Section 15, T4N, R24E. The purchase price paid at the execution sale is treated as a credit to Ivies in setting the amount of Freys' judgment.

9. Subsequent to the filing of this bankruptcy, Ivies redeemed this real estate sold at execution sale for the sum of zero (–0–) dollars on the parcel described as Parcel # 2 and for the sum of $174.39 on the leasehold interest. (Order filed in Bankruptcy # 93–10412, on March 30, 1993, of which judicial notice is hereby taken).

10. On July 29, 1992, prior to the filing of this bankruptcy, the Debtors filed a homestead exemption, Exhibit D, on the property on which they then resided described as follows:

Yellowstone County, Montana,

Township 4 North, Range 24 East

Section 4: Lots 3 & 4, S½NW¼, SW¼
Section 5: SE¼
Section 8: NE¼
Section 9: W½

That per the appraisal of David J. Thor, the appraised value of that property is $198,621.60.

11. The creditor, Claire Ivie, holds a first mortgage on that property described as follows:

Yellowstone County, Montana,

Township 4 N., Range 24 East,

Section 9: W½

with a principal balance due thereon as of August 25, 1993, in the sum of $60,855.00 and accrued interest, as of August 25, 1993, of $5,199.35. Exhibit E.

12. The creditor, First Interstate Bank, Billings, Montana, has a first mortgage lien on certain real property of Debtors described as follows:

Musselshell County, Montana,

Township 5 North, Range 24 East,

Section 32: SW¼

Yellowstone County, Montana,
Township 4 North, Range 24 East,

Section 4: Lots 3, 4, S½NW½, SW¼
Section 5: SE¼
Section 8: NE¼
Section 32: NW¼

Further, such mortgage is a second lien on that real estate subject to the mortgage running to Claire Ivie described above in Finding 11.

The balance due on the Bank's mortgage as of August 25, 1993, is the principal sum of $148,000.00, with no accruing interest, plus the principal sum of $6,312.67, with accrued interest thereon of $289.14, and interest accruing thereafter at the rate of nine percent (9%) per annum. Exhibits F & G.

13. The Debtors are the beneficiaries of certain CRP contracts relating to that real estate described in Parcel #1, as CRP Contracts #34 and #35; CRP Contract #34 pays the sum of $27,876.00 per year; Contract #35 pays $11,024.00 per year. Debtors have a right to all of these payments, except the sum of $8,900.00 from Contract #34 has been assigned to Claire Ivie for payment on Claire's mortgage, and the balance of $2,124.00, plus $27,876.00 from Contract #35 assigned to First interstate Bank on its mortgage. It is by the proceeds of these CRP contracts on the mortgaged property that Debtors are able to pay the secured liens and retain ownership of the real property. The Ivies do all work necessary to keep their contracts in compliance with CRP regulations. Each of these CRP payments, were received on or about November 15, 1993, paid to Debtors' respective creditors and applied to the respective secured debts, including the secured obligations described in paragraph 18 of these agreed facts.

14. This Court takes judicial notice of the Proofs of Claim filed herein by the First Interstate Bank, with the Exhibits attached thereto.

15. Exhibit H, pages 1 through 8, are the tax statements showing real estate taxes due on Parcel #1 and #2, except the Musselshell County real estate, which taxes are as follows:

$357.77 for 1992 and $402.73 for 1993.

16. The mortgages of First Interstate Bank and Claire Ivie described in ¶.11, and ¶.12, were both filed and recorded prior to the entry of the judgment of Freys.

17. That the leasehold interest claimed by Debtors in the S½ of Section 15 is for the 219.6 acres enrolled in the CRP Contract #33, with Debtors as tenants and Freys as owners, which contract has five (5) years to run. This CRP contract pays a total of $8,784.00 per year, with one-half (½) going to the tenant and the balance to the owner. The Debtors' interest in this payment is assigned to First Interstate Bank. There is no recorded notice of this leasehold interest filed with the Yellowstone County Clerk and Recorder.

18. The claim of the First Interstate Bank is also secured by personal property of Debtors, described as follows:

| Item | Value |
| --- | --- |
| 1976 Case Tractor | $4,200 |
| MF–655 Swather | |
| 282 Millrow Drill | Exhibit J. |

From the above agreed facts, the parties have different opinions as to whether there is an equity in the Debtors' homestead. The Debtors claim an equity of $28,970.69 in the homestead after deducting the mortgages of the Bank and Claire Ivie. Conversely, Freys claim the appraised value of the homestead is $198,621.60, against which there are consensual liens of $220,367.02.

■ I find from the above facts that the appraised value of the homestead property is as follows:

| | |
| --- | --- |
| Section 4: | $ 76,003.00 |
| Section 5: | 33,294.10 |
| Section 8: | 29,268.10 |
| Section 9: | 60,056.50 |
| TOTAL | $198,621.70 |

Claire Ivie's mortgage against Section 9 is $66,054.35. First Interstate Bank's mortgage against Sections 4, 5, 8, and 9 (and other property) is $154,312.67. Thus, the consensual encumbrances total $220,367.02. Accordingly, there is no equity in the homestead property. The equity arises only when the value of all of the Bank's mortgaged property is considered together with the homestead property. That is to say, the

total value of all of the mortgaged property is $243,629.00, against which there are consensual liens of $220,367.02. However, since the issue before the Court concerns only section 522(f) and thereby the homestead property, the other tracts mortgaged to the Bank are irrelevant to the pending issue. *Owen v. Owen*, 500 U.S. 305, 311–14, 111 S.Ct. 1833, 1837–38, 114 L.Ed.2d 350 (1991) states the proper approach is to consider only encumbrances which are not avoidable under the Bankruptcy Code or other applicable law.

■ There is a split of authority among the courts as to whether the value of a Debtor's interest in the homestead property must be greater than zero, i.e., whether there must be an equity in the property in order to invoke the provisions of § 522(f). *In re Saturley*, 149 B.R. 245, 248–249 (Bankr.Me. 1993) has gathered the conflicting authorities and holds:

> The Supreme Court has not answered the question whether the value of a debtor's interest in property claimed as exempt must be greater than zero in order to avoid judicial liens. *Owen v. Owen*, [500] U.S. [305, 311 n. 4], 111 S.Ct. 1833, 1837 n. 4, 114 L.Ed.2d 350 (1991). Circuit level authority is split. *Compare In re Simonson*, 758 F.2d 103, 106 (3d Cir.1985) (interest of economic value required); and *Fitzgerald v. Davis*, 729 F.2d 306, 308 (4th Cir.1984) (same, dictum); *with In re Brown*, 734 F.2d 119, 125 (2d Cir.1984) ("debtor is permitted, even if he lacks an equity interest in the property, to avoid the fixing of a judicial lien on the property...."). Noting that the law is unsettled, the Bankruptcy Court for the District of New Hampshire recently analyzed the Code and pertinent case law and determined that some economic value in the debtor's interest in property that is the subject of an exemption claim is a prerequisite to § 522(f)(1) lien avoidance. *DeLiguori v. Granite Bank (In re DeLiguori)*, 146 B.R. 52, 57–59 (Bankr.D.N.H.1992).

I agree with *DeLiguori's* reasoning and hold that, in order to avoid judicial liens on residential real estate under § 522(f)(1), a Maine debtor must hold an interest of cognizable economic value in the property that is the subject of his exemption claim. To hold otherwise invites "anomalous," legislatively-unintended results when, for example, judicial liens are "sandwiched" by unavoidable mortgages. *In re DeLiguori*, 146 B.R. at 59, citing *In re Simonson*, 758 F.2d at 106. Cf. *Kenpak Converters, Inc. v. Patterson (In re Patterson)*, 139 B.R. 229 (Bankr. 9th Cir.1992) (resolving circular priorities). This conclusion is consistent with traditional notions of debtors' exemption rights, gives correct content to Maine's exemption statutes and serves properly to protect those interests that Congress sought to safeguard when it enacted § 522(f).

\* \* \* \* \* \*

Certainly, a debtor's "interest" in residential property encompasses rights beyond the dollar values of the debtor's economic interest. *See, e.g., In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP 1990); *In re Cormier*, 147 B.R. 285 (Bankr.D.Me.1992) (right to cure default after foreclosure judgment); *In re DeLiguori*, 146 B.R. at 58; *In re Kruger*, 77 B.R. 785, 787 (C.D.Cal. 1987). However, whether a valueless interest may support an exemption depends on the parameters set by state or federal exemption law. *Owen v. Owen*, [500] U.S. at [307–08], 111 S.Ct. at 1835. If applicable law provides, the debtor may exempt an interest in property which has no economic value at the time of the bankruptcy. For instance, in *Owen*, the Supreme Court noted that bare legal title to an over-encumbered house might support an exemption. *Owen v. Owen*, [500] U.S. at [307–10], 111 S.Ct. at 1835–36.

Montana's exemption statute protects the homestead against creditor's execution sale up to a determined dollar value of $40,000.00. Mont.Code Ann. § 70–32–104. "A homestead may not exceed in value $40,000." Consequently, the Montana statute, like most states, protects the economic interest of the debtors in the homestead property.

*Saturley* continues:

> *Value of Rights in Exempt Property Under § 522(f).* In connection with § 522(f) proceedings, the value of a debtor's interest in property claimed as exempt

is to be "measured by taking into account those interests of other parties which may not be avoided under § 522(f)." *In re Simonson,* 758 F.2d at 105. *See Owen v. Owen,* [500] U.S. at [307–10], 111 S.Ct. at 1835–36 (critical inquiry in applying § 522(f) to both federal and state exemptions is what exemption the debtor would have been entitled to *"but for the lien at issue ..."*) (emphasis in original). *See also Fitzgerald v. Davis,* 729 F.2d at 308; *In re Galvan,* 110 B.R. at 450.

*Id.* at 249–250.

I concur with the reasoning and interpretation of § 522(f) in the *Saturley* case. This result is also consistent with *In re Galvan, supra,* where, like the present case, the order of priorities of the liens against the homestead property were, first, the consensual liens, second, the homestead exemption, and third, the judicial lien. *Galvan* explains:

The property of the bankruptcy estate includes, among other things, all the legal and equitable interests of the debtor as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203–07, 103 S.Ct. 2309, 2312–14, 76 L.Ed.2d 515 (1983); *In re Sluggo's Chicago Style, Inc.,* 94 B.R. 625, 627 (9th Cir. BAP 1988). The debtor may remove such property from the bankruptcy estate and thereby place the same beyond the reach of creditors by claiming exemptions. 11 U.S.C. § 522(b); *In re Woodson,* 839 F.2d 610, 616 n. 8 (9th Cir.1988). Such exemptions may be claimed to the extent that the debtor has equity in the property sought to be exempted. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360–61 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The requirement that the debtor possess equity in the property sought to be exempted ordinarily precludes the debtor from claiming exemptions in property which is fully encumbered at the petition date. Section 522(f)(1) eases this restriction by permitting the debtor to *create* equity in limited circumstances and then use the equity created to claim exemptions that would have otherwise been unavailable. *In re Simonson,* 758 F.2d 103, 108 (3d Cir.1985) (Becker, J. dissenting); *Alu v. State of N.Y. Dept. of Tax. & Finance,* 41 B.R. 955, 957 (E.D.N.Y.1984).

Section 522(f)(1) provides that the debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would otherwise have been entitled. *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1337 n. 15 (9th Cir.1985); *In re Pederson,* 78 B.R. 264 (9th Cir. BAP 1987), *aff'd,* 875 F.2d 781 (9th Cir.1989); *In re Baxter,* 19 B.R. 674, 675 (9th Cir. BAP 1982).

*Id.* at 449.

Since the Debtors Ivie have no equity in the homestead property, Section 522(f)(1) is not available to void the judgment lien of Freys. Accordingly, Debtors' motion to avoid the judgment lien under Section 522(f)(1) must be denied. By reason of this holding, there is no need to decide other peripheral issues raised by the parties.

IT IS ORDERED the Clerk shall enter Judgment in favor of the Defendants Frey, and against the Plaintiffs Ivie, that the judgment lien of Frey is not voided under 11 U.S.C. 522(f)(1).